WILL HANNAH, APPELLEE, V. AMERICAN LIVE STOCK INSURANCE COMPANY, APPELLANT.

FILED FEBRUARY 13, 1924. No. 22652.

1. **Appeal:** ADJOURNMENT, FAILURE TO APPLY FOR. A party to a suit cannot after the close of the trial, for the first time, successfully contend that he was prejudiced by the trial proceeding without sufficient time being allowed for preparation after issues joined, unless timely application for an adjournment was made either prior to or during trial.

2. ——: RECORD. "Affidavits used on the hearing of a motion for a new trial cannot be considered in this court unless preserved in a bill of exceptions." *Schmidt v. Village of Papillion*, 92 Neb. 511.

3. **Insurance:** FORFEITURE: WAIVER. A live stock insurance company, in response to a notice by telephone that an insured animal was ailing, sent veterinarians to take charge of the animal, who examined it, operated upon it, and continued to visit and treat it until its death about a month and a half later. *Held*, to have thereby waived a right to declare a forfeiture under the policy on account of failure to notify by telegram on first appearance of sickness or disease.

4. ——: VIOLATION OF CONDITIONS. Under the statutes of Nebraska, the violation of a condition in a policy of insurance on live stock, by the removal of insured chattels from premises of owner, does not invalidate the insurance, unless such breach of contract shall exist at the time of the loss and contribute to the loss. Comp. St. 1922, sec. 7787.

5. **Trial:** INSTRUCTIONS. "A party desiring a more explicit in-

struction than that given should offer such an instruction."
*Larsen v. Savidge*, 103 Neb. 79.

APPEAL from the district court for Seward county:
GEORGE F. CORCORAN, JUDGE. *Affirmed.*

*Kennedy, Holland, DeLacy & McLaughlin,* for appellant.

*Thomas, Vail & Stoner, contra.*

Heard before MORRISSEY, C. J., LETTON, ROSE and GOOD,
JJ., ELDRED and REDICK, District Judges.

ELDRED, District Judge.

This action was instituted by plaintiff to recover of defendant for the loss of a registered sow, described as "Big Mary," under a policy of insurance issued by the defendant on payment of a premium of $150, insuring the property in question against loss by death in the sum of $1,000. Plaintiff in the court below recovered judgment in the sum of $1,116.45, and defendant appeals.

The policy by its terms makes the application for insurance a part of the policy. The policy provides that the defendant will not be liable for the loss of any hogs, covered by the policy, taken from the premises where they were kept when application was made. The application provides: That insured property was kept on farm of assured in Seward county, Nebraska; that assured should notify the American Live Stock Insurance Company at its home office in Omaha, Nebraska, by telegram at the company's expense at first appearance of sickness or disease among his hogs, beginning on the day the application has been taken, and the company would not be liable for any hogs taken from the premises without the written consent of the company. The application also contains the following: "This sow is now at the farm of T. W. Haviland, Corning, Iowa, and on Monday, October 20, she will be taken to the farm of Lynden M. Young, Corning, Iowa, to be bred. She will remain there for three weeks, and then will be shipped by express to me at Utica, Nebraska, and will then remain on my farm for

duration of the policy year unless I otherwise advise you. This application signed with the understanding that the insurance will go into effect ten days from this date, and will cover this sow during transportation from Iowa to my farm in Utica." The policy contains the following indorsement: "Privilege granted to ship sow from Corning Iowa, to Utica, Nebraska, assured's home." The application was dated October 17, 1919. At that time the sow was at Haviland's place in Corning, Iowa. The policy was issued October 27, 1919; she was then at Young's place, Corning, Iowa, where she stayed until December 8, 1919, on which day she was shipped to Scribner, Nebraska, for breeding, and placed on premises of one Ferguson; she remained there until February 3, 1920, when she was shipped to Utica, Nebraska, and placed on farm of plaintiff. The insured sow died March 31, 1920.

Witness Wessels, of whom plaintiff purchased the animal, testified that the sow was in good condition, as far as he could see, at the time he sold her to plaintiff; that after that and before shipment from Corning to Scribner she "had a spell of lameness in right hind leg in the foot," but appeared to be over it when shipped. Witness Ferguson, on whose premises the sow was kept while at Scribner, testified that while at his place she was lame a week or ten days, and got all right again; that she had an enlarged toe on inside of right hind foot. When she arrived at Utica and was placed on the farm of plaintiff, she showed some lameness, and had an enlarged toe. This lameness was at first looked upon as of a trivial character. About February 15, 1920, her condition growing more serious, Dr. Trump, a veterinarian, at request of defendant company, began to treat her. An abscess formed between the hock joint and toes, which he opened on the 17th of February. While treating her, Dr. Trump observed an old scar on outside of same leg. On February 26 Dr. Trump, with Dr. Anderson, chief veterinarian for defendant, amputated the enlarged toe. Infection set in and she died March 31, 1920, from toxemia.

One defense raised by the answer of the defendant is

that the insurance was forfeited by shipment of insured animal to Scribner, instead of direct to Utica. Plaintiff contends that such right of forfeiture, if it ever existed, was waived by the acts of the officers and agents of the defendant after knowledge that the sow was shipped to Scribner. The reply to the amended answer setting up such waiver was filed November 28, 1921, and trial begun on same day. Defendant contends that it was prejudiced by the trial proceeding at that time on account of not being able to secure the attendance of the veterinarian, Dr. Anderson, as a witness. No application for a continuance was made prior to or during trial. The question was first raised by motion for a new trial. Defendant knew, at least during trial, if not before, what evidence might be material to rebut the evidence offered by plaintiff to support the issues raised by the reply. If the testimony of any material witness could not be secured at that time, application for a continuance should have been seasonably made.

The next assignment of error relied upon by appellant is that the trial court erroneously stated in the hearing of the jury, during the argument of defendant's counsel, that there was no evidence that the hog had a fractured leg. Dr. Trump was asked: "In your history here or your memoranda, I notice this statement, 'third metatarsus fractured.' Is the third metatarsal bone a large bone that extends between the hock joint and the phalanges? A. Yes." And plaintiff on cross-examination was asked: "Were you present when the veterinarian took a piece of bone out of this abscess? A. Yes, sir." This is all of the testimony to which counsel has cited us, and all we have found from a search of record that even intimates that there was an injury to the bone. This falls short of establishing that the sow had a fractured leg. The remarks complained of, if made, were in accord with the evidence, and not subject to criticism.

With reference to the two assignments of error just referred to, we might add that they are not properly substantiated by the record. While there appears to have been

an affidavit filed with motion for new trial to sustain the contentions of appellant, the affidavit has never been preserved in a bill of exceptions, and, under a well-established rule of practice, cannot be considered by this court. *Schmidt v. Village of Papillion*, 92 Neb. 511.

By the terms of the policy the plaintiff agreed to notify the defendant by telegram on "first appearance of sickness or disease" of insured hog. Defendant contends that, on account of failure to notify by telegram when hog was first observed to be lame, insurance was forfeited. It can hardly be held under terms of the policy that every trivial lameness in an insured animal should be treated as a sickness or disease. It seems from the evidence that the lameness was at first considered unimportant; however, when it failed to respond to local applications suggested by Dr. Trump (who afterwards had charge of hog under directions of defendant), the defendant was notified, not by telegram, but evidently by telephone; the defendant acted upon such notice and instructed Dr. Trump to take charge of the animal, and from that time on he and Dr. Anderson, chief veterinarian of defendant, had charge of the case until death of hog a month and a half later. Defendant, with knowledge that the provisions of the policy for notice by telegram had not been complied with, acted upon the notice it did receive, had its veterinarians take charge of hog, and continued in charge of it and to treat it until its death. By its act the defendant waived a strict compliance with the terms of the policy regarding notice of sickness, and cannot now rely thereon to defeat recovery by the plaintiff. *Smith v. People's Mutual Live Stock Ins. Co.*, 173 Pa. St. 15; *Schmidt v. Williamsburg City Fire Ins. Co.*, 95 Neb. 43; *Hunt v. State Ins. Co.*, 66 Neb. 123; *Home Fire Ins. Co. v. Kuhlman*, 58 Neb. 488.

"Forfeitures are looked upon by courts with ill favor, and will be enforced only when the strict letter of the contract requires it; and this rule applies with full force to policies of insurance." *Haas v. Mutual Life Ins. Co.*, 84 Neb. 682.

One of the provisions of the policy relied upon by the de-

Hannah v. American Live Stock Ins. Co.

fendant is to the effect that the company will not be liable for any hogs, covered by the policy, taken from the premises where they were kept when the application was made. This provision must be construed in harmony with the provisions of the application and indorsements made on the policy. From the policy and the application, which is a part thereof, the logical conclusion is that the policy was intended to cover the insured animal while at Corning, Iowa, and while en route, from there to Utica, Nebraska, by the usual route, as well as on the premises of plaintiff; that during the time that the property was at Scribner, and en route to and from that point, the policy was suspended; that when the property was brought to Utica, and placed upon plaintiff's farm, the contract of insurance was reanimated, and again attached to the property, unless some extra hazard was incurred by the shipment to Scribner, which contributed to the loss.

In this case the evidence discloses that the insured animal was removed from the location where it should have been kept, and taken to Scribner, in violation of the provisions of the policy; that the removal was temporary for purpose of breeding; and that such animal was returned from Scribner and placed upon the premises of assured before loss occured, and without any forfeiture being declared.

The temporary removal of the insured animal from the premises, where, by the provisions of the policy, it should have been kept would not invalidate the insurance, in the absence of proof that the failure to keep her on the premises of the assured existed at the time of the loss and contributed to the loss. Comp. St. 1922, sec. 7787; *Security State Bank v. Ætna Ins. Co.*, 106 Neb. 126; *Home Fire Ins. Co. v. Johansen*, 59 Neb. 349; *Johansen v. Home Fire Ins. Co.*, 54 Neb. 548; *Waters v. Nebraska Mutual Ins. Co.*, 108 Neb. 1; 19 Cyc. 741; 4 Joyce, Insurance (2d ed.) sec. 2239. This feature of the case was fairly submitted to the jury by instruction No. 9, of which no complaint is made.

There is evidence from which the jury might properly have concluded that the death of the insured animal was the

outcome of a recurring lameness of long standing; possibly the result of an injury received prior to plaintiff's purchase of the animal, which left the old scar observed by Dr. Trump while he was treating her. This scar was on the same leg in which the recurring lameness at Corning, Scribner and Utica was located. It is not apparent from the testimony that she received any injury after the execution of the policy, nor that the shipment to Scribner in any manner contributed to the loss.

Complaint is made of instruction No. 4, which states that the defendant is bound by "any knowledge shown to have been possessed by any officer or authorized agent of the company," and it is urged that the court does not define what would constitute an authorized agent. It is true the court does not attempt to do so in that instruction, but we think the subject was fairly covered by instructions Nos. 5 and 6.

Instruction No. 5 is also criticised on account of stating that, in determining whether or not any person was the agent of the company, the jury should consider whether such person has "assumed to exercise and has been permitted by defendant company to exercise such power and authority as would justify a third person in believing him to be vested with power and authority of a duly authorized agent;" and that the test should be, "Did such action reasonably entitle a third person in believing the person to be invested with the power and authority of a duly authorized agent?" While the fore part of the instruction laid down the proposition referred to, the instruction went farther than that and in the same connection sets out certain claimed facts in regard to the action of Dr. Anderson which fairly meets the test which the defendant claims should be applied to them, and instructs the jury that if it finds such facts to be true, and that defendant permitted said Dr. Anderson to take charge of its business with plaintiff in respect to said sow and to exercise ostensible authority in that behalf, then they must find that the plaintiff was justified in regarding the said Dr. Anderson as an agent of the com-

pany, and that notice and knowledge to him would bind the company.

Instruction No. 6 likewise submits a statement of certain other claimed facts, which under the evidence could only apply to Dr. Anderson, and the jury are instructed that, if they find them to be established, it constitutes a waiver by defendant of a breach, if any there was, of the conditions of the policy, relied upon by defendant. These three instructions should be considered together. Taken as a whole, they fairly submit to the jury the question as to the authority of Dr. Anderson, as well as the facts which might constitute a waiver on the part of defendant. The jury could not have been misled thereby. There is no other witness to whom the question of authority or want of authority to bind the company might apply. Zackery was the secretary of the company, and one of the officers who signed the policy. There can be no question about his authority. If any more specific definition of the terms used in the instruction was desired, an instruction covering the same should have been drafted and requested. *Larsen v. Savidge*, 103 Neb. 79; 38 Cyc. 1688.

While the evidence of waiver of the forfeiture, if any there was, on account of removal of insured property from premises where it should have been kept, is not clear, yet we believe there was sufficient evidence of such waiver to submit the question to the jury. Zackery was the secretary of the company; while Dr. Anderson was chief veterinarian, and officed in the same suite of rooms with the secretary. However, the conclusion reached by the jury need not rest upon that question, but may rest upon the more forcible theory that there was no additional hazard due to the failure to keep insured property upon the premises where insured, and no forfeiture.

Complaint is made of instruction No. 7. The record shows this instruction to have been given at request of defendant. Defendant states in brief that this is incorrect; but there is nothing in the record itself to indicate that this might be incorrect. It is significant that the record shows no excep-

tion to this instruction by defendant, while other instructions given covering the propositions involved in this case were excepted to by defendant. The record imports verity. If there was an error in the giving of this instruction, it was an invited error of which party cannot complain. However, the instruction does not appear unfavorable to defendant.

Instruction No. 8 advises the jury that if they find that the animal sustained any injury, either while being shipped to Scribner or while at farm of Mr. Ferguson where she was kept, and that any injury so sustained or received was the cause of her death thereafter, and that defendant never ratified shipment to Scribner, then the verdict should be for defendant. This instruction is criticised as omitting the element of injury while being shipped from Scribner to Utica. It will be noted that the instruction does not purport to embody every state of fact which would entitle the defendant to a verdict. In other words, it did not attempt to embody all the defendant's contentions. It merely summed up certain facts which, if established, would defeat recovery. There was no evidence of any injury in shipment from Scribner to Utica, and the defendant was not prejudiced by failure to instruct thereon. At most, it was a mere nondirection with reference to the specific matter complained of, so far as instruction No. 8 is concerned, and the matter was subsequently covered by instruction No. 9, which covers any extra hazard on account of the shipment by way of Scribner, or in her care and treatment during that time.

The cause was fairly submitted to the jury by the instructions of the court, and no prejudicial error appearing of record, the verdict should not be disturbed.

The judgment of the court below is

AFFIRMED.