ALEXANDER A. BAUER, APPELLANT, V. EARL U. WOOD AND
ED A. WOOD, ACTING AS COPARTNERS UNDER THE NAME
OF EARL WOOD'S DAIRY, APPELLEES.

12 N. W. 2d 118

FILED DECEMBER 3, 1943. No. 31633.

*T. R. P. Stocker* and *Bruce Fullerton,* for appellant.

*Claude S. Wilson, Roy F. Gilkeson* and *Hymen Rosenberg, contra.*

Heard before SIMMONS, C. J., PAINE, CARTER, MESSMORE, YEAGER and WENKE, JJ.

MESSMORE, J.

Plaintiff seeks to recover compensation for his services in selling dairy products for the defendants. At the close of the plaintiff's evidence, defendants moved for a directed verdict which was sustained. Plaintiff's action was dismissed. From this ruling plaintiff appeals.

Plaintiff's amended petition is of great length. We here set forth the substance of it. In his first cause of action plaintiff alleged the partnership of the defendants and that they were engaged in the business of buying and selling, wholesale and retail, various dairy products and other merchandise, such as candy, cigars and cigarettes, operating various stores of the same nature throughout the city of Lincoln. The defendant with whom the transactions in this case were had was Earl U. Wood, who will be hereinafter referred to as Wood, and who acted for himself and the partnership.

Pursuant to a contract between the plaintiff and defendants, dated May 3, 1935, plaintiff opened a store for business at 931 South Twenty-seventh street in the city of Lincoln June 5, 1935, and entered the employment of defendants as manager, operating the store until March 22, 1941. He alleged that he performed all of the terms and agreements on his part, but that defendants neglected to do the things they agreed to do in such oral and written agreement. Plaintiff then detailed facts to disclose that he had had no previous business experience in the city and placed reliance upon the representations made by defendant Wood, which were inducements for plaintiff to operate the store; that such representations were false and untrue, made for the purpose of defrauding and injuring the plaintiff; that plaintiff, relying upon such representations and believing them to be true, accepted employment, and that defendants so induced the plaintiff, by various acts and artifices, false and fraudulent statements, to enter such employment. It was agreed that upon the sale of milk plaintiff was to receive a commission of one cent a quart. This amount he received until about eight months after the opening of the store when the commission was changed to one-half cent a quart, the defendants representing to plaintiff that they were compelled to pay higher sums for the merchandise, business was falling off, and there was a milk-and-cream war on among various firms in the same locality, making it necessary for them to reduce plaintiff's commission in order

to compete and carry on the business, which was losing money. Wood stated that he had negotiated with other firms in a similar business to meet and stabilize prices and regulate the business competition, to again put the business on a paying basis and reduce the overhead. Plaintiff pleaded that, relying on such fraudulent representations of the defendants, he was injured thereby, and prayed for damages in the sum of $2,000.

The third cause of action incorporated the allegations of the first cause of action with reference to the fraud practiced by the defendants against plaintiff, and was a *quantum meruit* pleading for services, and prayed for $2,000. The second cause of action incorporated all of the elements pleaded in the first cause of action and was for the reasonable value of services in selling merchandise, consisting of candy, cigars, cigarettes and tobacco.

Defendants' answer admitted the nature of the business, the employment of the plaintiff, the contract, and denied the fraud; alleged that there were no oral conditions or stipulations to the agreement; that after it had been entered into the commissions were agreed upon between the parties; that after eight months had elapsed Wood informed the plaintiff that the original commission of one cent a quart on milk would be cut to a half cent, because business was falling off, and defendants were obliged to pay a larger sum for merchandise; further, that plaintiff informed Wood that he was agreeable to the modified commission schedule, and thereafter the sale of products was made by the plaintiff in accordance with the modified schedule of commissions. The answer was substantially the same to the third cause of action, and, with reference to the second cause of action, it admitted that merchandise, such as candy and tobacco, was sold by the plaintiff actually for the purpose of promoting and increasing the sale of milk and other dairy products and promoting business generally. All other averments of the third cause of action were denied.

The contract, attached to the amended petition and made a part thereof, is dated at Lincoln, Nebraska, May 3, 1935.

It designated the parties to the agreement, the place of business, and that plaintiff made a deposit of $200, acknowledged the receipt of this amount; then stated that Earl U. Wood, the managing operator of the defendants, for and in their behalf, was to equip the substation with everything necessary for its complete operation, to pay the light, heat, rent, refrigeration, and to supply the merchandise for sale at the location. Plaintiff was to furnish the help necessary to keep the business open from 7 a. m. to 9 p. m., and longer if business warranted, plaintiff to be the judge. Plaintiff, for his compensation, was to work on a commission basis, the same to be agreed upon from time to time by Wood and plaintiff, and to be taken out on the checking of each day's business, to be done the following morning; the plaintiff to be responsible for the shortage of merchandise except that part which was spoiled or not up to standard; the contract to continue so long as the same was mutually satisfactory to both parties. In case the plaintiff became dissatisfied and desired to terminate the relationship, he could do so immediately, and 90 days thereafter $200 was to be returned to him. A similar provision, so far as the defendants were concerned, was incorporated and, if taken advantage of, would require the return of $200 with 5 per cent interest thereon.

The record discloses that plaintiff was paid commissions in full on the basis of one cent a quart for about the first eight months; that he operated the store, and that from February 1, 1936, to March 1, 1941, 372,405 quarts of milk were sold by the plaintiff upon which a commission of one-half cent a quart was allowed, which the record shows he had received and had taken this amount for a period of nearly six years before terminating the contract. It will be noted that the contract provided that by mutual agreement the commission could be changed. It is quite apparent that, by receiving this amount of money for such period, the plaintiff acquiesced in and agreed to the change. There is evidence that the plaintiff repeatedly requested the defendants to replace the half cent commission for each quart of

milk sold, and plaintiff testified he was led to believe that the reduction in the commission was temporary and it would be replaced. He told defendants' bookkeeper that he wished the defendants would replace the one-half cent commission which had been withheld; he stated that no final settlement was reached and that he had furnished defendants a written statement. He further testified that he and his wife, subsequent to January, 1936, complained to Wood and were told they had nothing to worry about, but that Wood kept putting them off. Wood testified that they were operating the business with little money, but that plaintiff had been paid his commission in full each and every week and that plaintiff had accepted such commission without complaint.

The testimony with reference to the sale of candy and tobacco shows the sales of candy in the amount of $1,569.28; tobacco sales $1,318.31; that defendants' gross profit in candy sales was $207.07, or 15 per cent, and on tobacco $131.50, or 11 per cent; total profit on the two items $339.57; the expense involved in selling the merchandise, including sacks and scales to handle the items and a tobacco license, which was $15 a year; the cost of defendants doing business at the station involved was 18 per cent of the sales in winter months and 10 per cent of the sales during the summer months. There is further testimony that this merchandise was placed in the plaintiff's place of business in order to promote sale of dairy products, and that no agreement of any kind was reached as to plaintiff's receiving any compensation for the sale of this kind of merchandise. The foregoing constitutes the essential elements of plaintiff's evidence.

Plaintiff predicates error on the sustaining of defendants' motion for a directed verdict. In considering the error complained of, the following authority is pertinent:

"A motion for a directed verdict must, for the purpose of a decision thereon, be treated as an admission of the truth of all material and relevant evidence submitted on behalf of the party against whom the motion is directed, and said

party is entitled to have every controverted fact resolved in his favor, and to have the benefit of every inference that can reasonably be deduced from the facts in evidence." *Moncrief v. Interstate Transit Lines,* 129 Neb. 168, 261 N. W. 163. See, also, *Zielinski v. Dolan,* 127 Neb. 153, 254 N. W. 695; *In re Estate of Skade,* 135 Neb. 712, 283 N. W. 851; *Bowerman v. Greenberg,* 142 Neb. 721, 7 N. W. 2d 711; *Long v. Railway Mail Assn.,* 143 Neb. 949, 12 N. W. 2d 113. We proceed with the foregoing rule in mind.

Plaintiff contends that in this case there were controverted issues of fact to be submitted to the jury, in that Wood withheld one-half cent commission for each quart of milk sold, which he would eventually raise to the original compensation agreed upon, continually informing the plaintiff that the defendants were "hard up," needed time and would "catch up" on the back payments, leading plaintiff to believe that Wood would abide by his statements in such respect; and, with reference to the sale of candy and tobacco, that Wood had informed plaintiff he would figure out the commission for the reasonable value of the services in selling such merchandise. Plaintiff claims that the profit of defendants on those items was $339.57, and that he is entitled to a commission for the value of the services rendered.

We refer to the contract and that part of it which reads: The plaintiff "for his compensation is to work on a commission basis, the same to be agreed upon from time to time between the said Earl Wood and" the plaintiff. The commission was changed, as heretofore stated, to one-half cent a quart, and this amount plaintiff received in full for a period of nearly six years after the change was made. We conclude that plaintiff is in no position at this time to orally dispute the agreement. It is obvious from a careful reading of plaintiff's amended petition that he based his action upon fraud, rather than upon contract, and pleaded all of the elements of fraud. As held in one of the numerous decisions in this state to the same effect:

"To maintain an action for damages for false representation, the plaintiff, in substance, must allege and must prove

by a preponderance of the evidence the following elements: (1) What representation was made; (2) that it was false; (3) that the defendant knew it was false, or else made it without knowledge as a positive statement of known fact; (4) that the plaintiff believed the representation to be true; (5) that the plaintiff relied on and acted upon the representation; (6) that the plaintiff was thereby injured; and (7) the amount of the damages." *Peterson v. Schaberg,* 116 Neb. 346, 217 N. W. 586.

Having pleaded fraud, the plaintiff was obligated to prove it, as disclosed by numerous decisions of this court, one of which held:

"Fraud is never presumed but must be proved by a preponderance of the evidence by the person alleging it, and upon failure to so prove, the party alleging fraud fails." *Ralston Purina Co. v. Cox,* 141 Neb. 432, 3 N. W. 2d 748.

"The rule of law is inflexible that the allegations and the proof, *allegata et probata,* must agree." *Traver v. Shaefle,* 33 Neb. 531, 50 N. W. 683. See, also, *Clarke v. Omaha & S. W. R. Co.,* 5 Neb. 314; *Imhoff v. House,* 36 Neb. 28, 53 N. W. 1032; *Ayers v. Wolcott,* 66 Neb. 712, 92 N. W. 1036.

The defendants' contention is that the trial court properly directed a verdict against plaintiff, for the reason that this action was brought as one founded on fraud and the plaintiff failed to establish fraud; citing *Reid v. Brechet,* 117 Neb. 411, 220 N. W. 590, wherein this court held:

"In a law action to recover damages growing out of a conspiracy to defraud, and such being the only issue tendered by the pleadings, the evidence of such conspiracy being insufficient to justify the trial court in submitting the case to the jury, it is error to submit the case to the jury on the theory of liability growing out of partnership relation." In determining this question, the court found it necessary to resort to the pleadings to ascertain the nature and theory of the action under which the plaintiff sought recovery and to analyze the pleadings. The function of the pleadings is to state the issues involved and the facts upon which the parties rely for their success in the action. The court in

the cited case went on to say: "Certainly the defendants in this case would have a right to know upon what theory the plaintiff was going to proceed and a right to rely upon plaintiff's statement of the case in order that the defendants might meet the plaintiff's evidence. The evidence must support the allegations in the petition or judgment in plaintiff's favor cannot be sustained." Citing *Traver v. Shaefle, supra; Elliott v. Carter White-Lead Co.,* 53 Neb. 458, 73 N. W. 948.

The plaintiff's criticism that the court in *Reid v. Brechet, supra,* considered the defendants' answer only as a general denial, is not warranted. While the contention was made that the defendants were not misled on the pleadings and that the defendants' pleadings were sufficient to join the issue on contract, and in their answer set forth their contractual defense, it is true that the very nature of the case required an answer to the contract pleaded, to show its relation with reference to the broad charges of fraud by the plaintiff upon which he premised his action. The defendants had a legal right to expect and anticipate that the plaintiff would proceed in accordance with the causes of action as pleaded in his amended petition. The testimony failed to establish any right of recovery in fraud, and the trial court properly directed a verdict for the defendants. The contract was mutual; plaintiff could have terminated it immediately and was not under obligation to accept the reduction made by the defendants for a number of years.

"Where the evidence is insufficient to sustain a verdict for plaintiff, the dismissal of the action is not erroneous." *Beber v. Beebe & Runyan Furniture Co.,* 97 Neb. 446, 150 N. W. 204.

While the plaintiff attempted to lay a foundation for the reasonable value of the services rendered for selling the candy and tobacco, it is apparent that he lacked knowledge of all of the elements necessary to disclose the reasonable value of such services. He did not take into consideration the overhead involved but premised his testimony merely on the cost price of the merchandise and the retail sale price

thereof. A proper objection was made to this testimony which the court sustained. No other testimony to show the reasonable value of such services was offered by plaintiff.

From an analysis of the record, we conclude that the judgment of the trial court should be affirmed.

AFFIRMED.