Joe E. Benson and William E. Hardesty, doing business as Wm. Hardesty Hay Company, appellees, v. Arch Walker, appellant.

59 N. W. 2d 739

Filed July 17, 1953.   No. 33312.

*Robert B. Waring* and *John Riddell,* for appellant.

*Kirkpatrick & Dougherty, Van Pelt, Marti & O'Gara, Warren K. Dalton,* and *Robert D. McNutt,* for appellees.

Heard before SIMMONS, C. J., CARTER, MESSMORE, YEAGER, CHAPPELL, and BOSLAUGH, JJ.

MESSMORE, J.

The plaintiffs, a copartnership composed of Joe E. Benson and William E. Hardesty doing business as Wm. Hardesty Hay Company, brought this action at law in the district court for York County to recover the sum of $2,326.73, with interest, alleged to be due the partnership from Arch Walker, defendant. The action is based upon an oral agreement entered into between the parties. The case was tried to a jury, resulting in a verdict in favor of the plaintiffs and against the defendant in the amount of $1,551.15. The defendant filed a motion for new trial which was overruled. From the order over-

ruling the motion for new trial, the defendant appeals. For convenience we will refer to the parties as designated in the district court.

The partnership has its principal place of business in Chickasha, Oklahoma. Joe E. Benson resides at Blackwell, Oklahoma, and transacts business for the partnership from that point, while William E. Hardesty resides at Tuttle, Oklahoma, and transacts business for the partnership in that part of the state.

While certain proceedings were had with reference to the pleadings, the same are not of importance and will not be related here. The pleadings upon which the case was tried are, in substance, as follows:

The plaintiffs' amended petition alleges that during June 1946, the defendant called upon Joe E. Benson at Blackwell, Oklahoma, and entered into an oral agreement with the partnership. The terms of the agreement were as follows: The defendant was to supply No. 1 green leafy hay to the partnership, which hay was to conform to and be substantially identical in quality with a sample of hay displayed by the defendant to Joe E. Benson. The hay was to be shipped by the defendant to such consignee as the members of the partnership would direct, defendant to prepay the freight thereon. Each shipment of hay made in accordance with the agreement was to be made upon the order of one of the plaintiffs and in accordance with telegraphic shipping instructions sent to defendant by one of the plaintiffs after the receipt of notice by plaintiffs from defendant of the date upon which said hay would be ready to ship. Amounts due defendant in payment for such shipments of hay were to be credited to defendant's account with the partnership, and settlement of such account was to be made periodically by remittance to defendant of such amounts as were then due him. The defendant shipped certain cars of hay in accordance with shipping orders received from the plaintiffs. The plaintiffs paid the defendant $2,777.96 for the shipments, with the understanding that

the defendant would indemnify plaintiffs for any losses which the partnership might suffer by reason of the unsatisfactory condition of the shipped hay. The petition further alleged that such shipments of hay were not No. 1 green leafy hay, but the hay was unfit for use upon arrival at its destination and did not conform to the sample of hay shown to plaintiffs by defendant; and that pursuant to oral authority given to plaintiffs by defendant, the plaintiffs disposed of the hay for the freight charges thereon.

The petition contains the amounts paid to defendant and other amounts paid on his behalf to which the plaintiffs claim they are entitled to be indemnified. It is further alleged that the defendant had paid plaintiffs $571.75 on his account, and was credited for two cars of alfalfa shipped by the defendant to apply on his account, in the amount of $479.49, and $79.26 otherwise received; and that there remains due plaintiffs from defendant the sum of $2,326.73 on defendant's account with plaintiffs, for which amount, with interest from September 1, 1946, plaintiffs pray for judgment against the defendant.

The defendant's amended answer denied generally the allegations of the plaintiffs' amended petition, and alleged that on or about January 12, 1947, all demands and claims of plaintiffs for the year 1946 were settled and paid by check in the amount of $571.75. Defendant prays he may go hence without day and recover his costs herein expended.

The plaintiffs' reply to defendant's amended answer denied generally the allegations contained therein.

The record discloses that the partnership is engaged in the wholesale hay and grain business. The general nature of the business is to buy hay and grain from elevators and farmers and ship it to buyers for feeding cattle and for export. In January 1946, Benson was in the area of York, Nebraska, purchasing corn. He learned that there was a considerable amount of alfalfa

hay in the vicinity, and, being engaged in the business, he contacted the defendant and they discussed the hay situation in the area. He told the defendant if he ever had any hay to sell, to get in touch with the partnership. In May 1946, Walker made a trip to Blackwell, Oklahoma, accompanied by a friend. They arrived at Benson's house and he asked Benson to look over two bales of hay that he had brought along, which was grown in the York area. Benson did so. They discussed the quality of the hay and Benson told Walker he was only interested in No. 1 hay; that when they bought hay for shipment to the southland it had to be dry; and that Walker replied that if he shipped hay, that was the kind he would ship, green and ripe, good hay that would arrive dry on the other end of the line. Benson said that otherwise they could not use it. Benson described No. 1 hay as dry hay with a green color of 60 percent and 40 percent leaf generally. Benson also told Walker that in baling hay it should not be done when the weather was damp, for the reason that it would not get dry enough to ship on long hauls. The hay Walker was to ship was to be No. 1 hay, and the price was to be what he asked, and it must arrive to the buyer in merchantable condition. If the hay was not in good condition, it was still Walker's hay. Walker agreed to that. When Walker loaded his hay he was to call one of the members of the partnership and send a bill of lading with the price which had been agreed upon attached. Immediately upon arrival of such facts at the office, Benson would check the figures and weights and send Walker the amount that he was billed for. The partnership was to receive $2 per ton for handling the hay after it was accepted by the buyer. He was selling the hay for Walker as a broker, and the hay was shipped by Walker at Benson's direction.

In 1946, Walker had shipped in the neighborhood of 39 carloads of hay at Benson's direction. On July 22, 1946, Walker called Benson by telephone at Blackwell,

and told Benson that he had been notified by the railroad that they were in trouble at Columbus, Georgia, with some bad cars of hay. Benson told Walker that he, Benson, would go ahead and handle the hay as Walker suggested to the best advantage to protect the capital invested. Walker told him to do so. After Walker directed Benson to dispose of the hay, Benson got in touch with J. Thomas Morgan who was acting as an agent for the partnership at Columbus, Georgia, and directed Morgan to see that the hay was unloaded and stored, and when it was dry enough, to notify Benson.

The following described cars of hay are involved in the instant case:

| Date of Shipment | Car Designation | | Weight Pounds | Price Per Ton | Total Paid |
|---|---|---|---|---|---|
| July 3, 1946 | C.B. & Q. R.R. | 21096 | 36,220 | $24 | $ 434.64 |
| July 4, 1946 | Penna. R. R. | 564057 | 29,700 | 24 | 356.40 |
| July 7, 1946 | Penna. R. R. | 62804 | 41,380 | 24 | 496.56 |
| July 10, 1946 | C.B. & Q. R.R. | 25650 | 22,920 | 24 | 307.80 |
| July 10, 1946 | Milw. R. R. | 718737 | 33,040 | 22 | 363.44 |
| July 13, 1946 | Ill. Cent. R.R. | 40208 | 38,680 | 24 | 464.16 |
| July 30, 1946 | C. & O. R.R. | 9991 | 29,580 | 24 | 354.96 |

    Total                                               $2,777.96

Benson further testified that the partners received from Walker the sum of $479.49, which came from two cars of hay sent by Walker to apply on the balance of his account after he had received the audit of the amount that had been paid to him and the amount due the partnership, and he was credited with the amount of $479.49.

The deposition of J. Thomas Morgan discloses that he is a resident of Macon, Georgia; that he is acquainted with Joe E. Benson and William E. Hardesty; that he was engaged in the brokerage business dealing in hay, grain, and other feeds; and that he had purchased hay from the plaintiffs from June 1945 until July 1950. He

testified to the cars of hay shipped to Georgia which are the ones previously described, and that none of the cars so shipped contained No. 1 green leafy hay. The hay was in such condition that it was not salable, and was refused by the consignees.

William Hardesty testified that on July 21 or 22, 1946, he talked to Walker over the telephone from Chickasha in regard to the hay that was rejected, and asked him what he could do about it. Hardesty suggested they sell it at the best advantage, and he informed Walker of the condition of the hay, how it arrived, and said that all there was to do about it was to unload it and store it, and have Morgan dispose of it. Walker said he believed that was all that could be done. He could not go down and see about it, and told Hardesty to go ahead and dispose of it to the best advantage possible.

At the conclusion of the plaintiffs' evidence, the defendant moved the court to require the plaintiffs to elect upon which cause of action set forth in the petition they would stand, (1) whether they would stand upon a breach of contract of sale; (2) whether they would stand upon the guarantee of the quality of the goods and merchandise sold; or (3) whether they would stand upon the theory of tort and recover for the false representation of merchandise sold. This motion was overruled. The defendant then moved for directed verdict, for the reason (1) that the evidence adduced was insufficient to support any cause of action set forth in the amended petition; (2) that the evidence adduced did not show that the plaintiffs suffered any damage except nominal damages; and (3) that the evidence adduced by the plaintiffs was insufficient to show the fair and reasonable market value of the hay in question at the time of its arrival in Georgia, nor was there any evidence in the record to show what the hay would have been worth if as represented; and further, defendant moved, in the alternative, that the court direct the jury to return a verdict in favor of plaintiffs and against the

defendant in the sum of $1. for nominal damages in this matter. This motion was overruled.

The defendant Arch Walker testified that he resides in York, Nebraska, and engages in farming; that he had transactions with the plaintiffs during the years of 1946 and 1947; that he met Joe E. Benson in York in the winter of 1945, around Christmas time; and that he talked about purchasing hay, gave his name and address to this witness, and told him if he had any hay to sell in the following spring or summer, to call him. Later on Walker called Benson and told him that he had some hay to sell. Benson said they could use lots of it, and told Walker where to send it. Walker billed out a load and shipped it. He believed Benson told him that he would pay $22 a ton for it, but did not remember. He was to get the weights and send them to Benson. Later he went to see Benson in Oklahoma, and took a sample of hay. He did not know whether it was good enough to ship or not, that was what he desired to find out. Benson examined the hay and said that he could use lots of it, as there was a big demand for it. He did not know that Benson was to charge a commission of $2 a ton for handling the hay. There was nothing said about the kind or quality of the hay, that it was to be No. 1 green leafy hay, or that if it was damaged in transit he, Walker, would have to stand the loss. He continued to ship hay during the months of June, July, August, September, and October of 1946. The practice with reference to shipping this hay was that there was usually some hay on the road, and he would get a check when he sent Benson the weights. Lots of times in the letter there would be a check and a notice of the place to send the hay if he had it. He heard the testimony of Benson and Hardesty that they called him on July 22, 1946, about the seven loads of hay that were shipped to Georgia. He remembered Benson calling him in August 1946. Benson never made any demand for repayment of this money for the hay in Georgia, and

he never did say that the hay in Georgia was rotten or bad, or ask for a refund of the money. Walker continued to ship hay, and he was paid when they got the weights. He received a letter in which the partnership claimed that it had lost $571.75 on some hay that went out of Grand Island. This is evidenced by exhibit No. 4, a check on the First National Bank of York on which is marked "Loss on hay shipped in 1946." In a couple of weeks the defendant was billed for a further loss. He sent a check, exhibit No. 5, upon which was written "Loss on wet hay." This check was to Joe Benson in the amount of $407.27, dated February 12, 1947. No claim or demand was made by the partnership for any money until the 4th of December, 1947, at which time correspondence sent by J. Thomas Morgan to Benson was forwarded to this defendant. This correspondence had to do with the transaction involving the hay shipped to Georgia and handled by Morgan. This witness did not return this letter.

The defendant further testified that when he sent the check for $571.75, that was in full and complete settlement of all claims and demands against him on the part of the partnership. On cross-examination he admitted that he received from the plaintiffs the sum of $2,700, as claimed by them.

The defendant assigns as error that: (1) The trial court erred in overruling the demurrer of the defendant to the amended petition as amended. (2) The trial court erred in overruling the defendant's motion to require the plaintiffs to elect upon which cause of action they would stand. This motion is previously set out, and was made at the close of plaintiffs' evidence in chief. (3) The trial court erred in failing to direct a verdict for defendant made at the close of plaintiffs' evidence or to direct in the alternative a verdict in favor of the plaintiffs in the sum of $1. (4) The trial court erred in giving instructions Nos. 1, 4, 5, 6, and 7 on its own motion. (5) The trial court erred in overruling the

defendant's motion for judgment notwithstanding the verdict.

The defendant argues that the amended petition in no way indicates that the plaintiffs were commission men and that the hay in question was to be shipped on a commission; that there is no language in instruction No. 1 containing the statements of the issues as tendered by the petition which would indicate that the plaintiffs were commission men and selling defendant's hay on a commission; that there is no evidence of what No. 1 green leafy hay would have been worth in Nebraska or in Georgia, where it was shipped, or in Oklahoma where Benson lived, or any other place; and that there is no record of what would be the value of this hay any place if it had been as represented by Walker. The defendant further argues that this being true, the rule applicable is as follows: In an action for damages for breach of warranty in sale of personal property the measure of damages is the difference between the value of the property as it actually was and what would have been its value if it had been as represented. See, Sherrill v. Coad, 92 Neb. 406, 138 N. W. 567; Young v. Filley, 19 Neb. 543, 26 N. W. 256; McClatchey v. Anderson, 84 Neb. 783, 122 N. W. 67; Chicago, B. & Q. R. R. Co. v. Metcalf, 44 Neb. 848, 63 N. W. 51, 28 L. R. A. 824; Oxygenator Co. v. Johnson, 99 Neb. 641, 157 N. W. 339.

The defendant further calls attention to the instructions of the trial court which are as follows:

"No. 5. A.- There is evidence tending to support a finding that hay was sold by defendant to plaintiffs; that the hay was shipped by defendant pursuant to instructions of plaintiffs, was paid for it by plaintiffs and that it became plaintiffs' hay to sell to others as they desired.

"B.- There is also evidence tending to support a finding that plaintiffs were to sell hay belonging to defendant on commission, remitting the price of the hay to defendant periodically upon being advised that it had

been shipped and the weights thereof, but that the hay would belong to defendant until such time as it was sold to some third party to whom it was to be consigned.

"Under all of the evidence in this case it is important that you determine at this point which, if either, of these finding (findings) is proved by the greater weight of the evidence as will be pointed out in Instruction No. 6 and No. 7."

"No. 6. If you find the situation to be as set out in Paragraph A of Instruction No. 5 the result will be that there is a lack of competent evidence from which you can determine the amount of damages if any, and as you are not permitted under the law to speculate nor guess as to the amount of damages, you should in that event return a verdict from (for) the defendant, provided, however, if you find the situation to be as set out in Paragraph A of Instruction No. 5 and find for the plaintiffs on all matters under all of the instructions you should return a verdict for the plaintiffs and fix their damages at the sum of $1.00."

"No. 7 If you find the situation to be as set out in Paragraph B of Instruction No. 5 then the measure of damages, if any, if you find for the plaintiff, would be the amount that plaintiffs have advanced to defendant for hay which you may find to have been shipped and for freight charges, if any, which you find were advanced by plaintiffs at defendant's request less any credits which have been proved."

The defendant argues that in the foregoing instructions the trial court recognized the lack of evidence on the measure of damages as evidenced by instruction No. 6. In this connection, the defendant contends that under the rule as stated in Ayres v. Wolcott, 66 Neb. 712, 92 N. W. 1036, and Bauer v. Wood, 144 Neb. 14, 12 N. W. 2d 118, the rule of law is inflexible that the allegations and the proof, allegata et probata, must agree; and that such is not the situation in the instant

case for the reasons heretofore set out as contended for by the defendant.

To determine whether a cause of action is pleaded in the manner in which it is required to be pleaded, the following is applicable: Under the code system of pleading, it is not necessary to state a cause of action or defense in any particular form. The facts are to be stated. See section 25-804, R. R. S. 1943, which provides in part: "* * * (2) a statement of the facts constituting the cause of action, in ordinary and concise language, and without repetition; and (3) a demand of the relief to which the party supposes himself entitled. If the recovery of money be demanded, the amount thereof shall be stated; and if interest thereon be claimed, the time from which interest is to be computed shall also be stated." All that the law requires is that there shall be a cause of action or defense. It looks at the real rights of the parties and aims at the protection and enforcement of such rights. See, In re Estate of Wise, 144 Neb. 273, 13 N. W. 2d 146.

The character of a cause of action is determined by the allegations of fact contained in the petition, unaffected by the conclusions of the pleader. See, Johnson v. Radio Station W. O. W., on rehearing, 144 Neb. 432, 14 N. W. 2d 666; State ex rel. Johnson v. Wagner, 139 Neb. 471, 297 N. W. 906.

The oral agreement pleaded by plaintiffs is the understanding between the plaintiffs and the defendant that the defendant was to supply No. 1 green leafy hay; that the plaintiffs were to sell the hay belonging to the defendant, remitting the price of the hay to the defendant periodically upon being advised that it had been shipped and the weights thereon; and that the hay would belong to the defendant until such time as it was sold to some third party to whom it was to be consigned. The evidence disclosed that the plaintiffs were to receive a commission of $2 a ton for handling the hay.

The allegations of plaintiffs' amended petition and the facts pleaded therein do not constitute a suit based upon a breach of warranty or a breach of contract, or upon deceit or false representations. The suit is based upon the oral agreement as pleaded therein. The evidence sustains the allegations as pleaded in the amended petition and, if believed by the jury, the jury would be fully warranted in returning a verdict such as it did in the instant case.

The measure of damages in this case was the amount paid to or for the defendant on account of the defendant's hay which was not in accordance with the sample, was not No. 1 green leafy hay, and was in such a condition that it was unsalable so that the consignee could not accept it and refused to do so.

The court did instruct, as pointed out in A of instruction No. 5, and instruction No. 6 applicable thereto, a theory upon which the defendant would be entitled to the relief sought by him in accordance with his motion made, that in the event the plaintiffs were entitled to recover damages, the damages would be nominal only. We see no prejudicial error in submitting the two theories as submitted and explained in the instructions given by the trial court.

This brings us to the assignment of error that the trial court, in effect, took away from the jury the affirmative defense of payment as pleaded in the defendant's answer; and that by instruction No. 7, its effect was that the $571.75, which the defendant contends constituted a full and complete settlement of the claims or demands of the plaintiffs, was completely withdrawn from the jury.

In instruction No. 4, of which the defendant complains but does not argue, the trial court said in part: "* * * unless it is proved by the greater weight of the evidence, considering also any evidence introduced by plaintiffs, that such damages, if any, have been settled

and paid, in which event you would find for the defendant."

In instruction No. 2, the trial court set forth the substance of the affirmative defense of the payment as pleaded in the defendant's answer. We are not in accord that the effect of instruction No. 7 was to withdraw from the jury the affirmative defense of payment as alleged in the answer of the defendant. In the event that the defendant desired a more explicit instruction than that given, he should offer such an instruction. See Hannah v. American Live Stock Ins. Co., 111 Neb. 660, 197 N. W. 404.

Instructions must be considered and construed together. If they are not sufficiently specific in some respects, it is the duty of counsel to offer requests for instructions that will supply the omission. And, unless this is done, the judgment will not ordinarily be reversed for such defects. See, Christensen v. Tate, 87 Neb. 848, 128 N. W. 622; Plumb v. Burnham, 151 Neb. 129, 36 N. W. 2d 612.

Other assignments of error are without merit and need not be discussed.

For the reasons given herein, the verdict and the judgment entered thereon are affirmed.

AFFIRMED.