OLGA DICKMAN, APPELLANT, V. JOSIAH R. HACKNEY ET AL., APPELLEES.

31 N. W. 2d 232

Filed March 3, 1948. No. 32278.

*Pilcher & Haney,* for appellant.

*Kennedy, Holland, DeLacy & Svoboda,* for appellees.

Heard before SIMMONS, C. J., PAINE, MESSMORE, YEAGER, CHAPPELL, and WENKE, JJ., and WESTERMARK, District Judge.

MESSMORE, J.

This is a law action brought by the plaintiff against the defendants to recover damages for injuries received by the plaintiff, and damage to her automobile as the result of a collision between the plaintiff's automobile and the automobile being driven by the defendant William F. Hackney. At the conclusion of all the evidence the defendants moved for a directed verdict. This motion was sustained by the trial court. Upon the overruling of the motion for new trial, plaintiff appealed.

For convenience, the appellant will hereinafter be referred to as the plaintiff, the appellee Josiah R. Hackney will be referred to by name as occasion requires; and the appellee William F. Hackney will be referred to as the defendant.

The plaintiff contends that the trial court erred in refusing to submit the case to the jury. This requires an examination of the evidence to determine whether or not the same makes a case to be submitted to the jury. We set forth in substance as much of the pleadings and the evidence disclosed by the record as we deem necessary to a determination of this appeal.

The plaintiff's petition alleged negligence on the part of the defendant driver, in substance, as follows: In operating an automobile on the highway in the nighttime at a high, excessive, careless, and unlawful rate of speed; driving said automobile at a speed greater than that which would permit him to bring it to a stop within the assured clear distance ahead, or within the range of the headlights; operating the automobile without lights; failing to keep a proper lookout for other vehicles on the highway; failing to sound horn or give any other signal to plaintiff of intention to pass; failing

to change or swerve or divert the course of the automobile to either the right or the left, or make any other attempt to avoid an accident; and failing to have the automobile under proper and complete control.

The defendants' answer admitted an accident occurred and that the plaintiff received slight injuries; denied generally the allegations of the plaintiff's petition; charged the plaintiff with contributory negligence; counterclaimed for damages to the car of defendant Josiah R. Hackney, charging the plaintiff was guilty of negligence which proximately caused the accident in executing a left turn from the outside lane of the highway instead of from the inner lane, as required by law; failing to signal for a left turn; failing to look to the rear for approaching vehicles before attempting a left turn; failing to have her automobile equipped with a taillight in operating condition sufficient to reveal the presence of her car on the highway to travelers approaching from the rear; and in first stopping and then starting her automobile up again directly across the path of the defendant's car.

The reply denied any acts of negligence on the part of the plaintiff.

A brief description of the vicinity where the accident occurred shows a four-lane highway running approximately north and south usually serving heavy traffic, from 45 to 50 feet in width, the two inside lanes being brick, the two outside lanes concrete, with dividing lines for the traffic north and south, and formerly known as highway No. 75, or the Fort Crook highway. The plaintiff lives at No. 7013 on this highway, which is about four blocks south of Harrison Street. Her house faces west, and the driveway into the yard runs east and west. North on the highway, as shown in exhibits, is Harrison Street, where there is a turn into the Fort Crook highway.

The plaintiff is the owner of a black, 1933 two-door Ford car. Josiah R. Hackney, the father of the defendant, is the owner of a 1940 Pontiac. At the time of the

collision, the defendant was driving his father's car, with his permission. For convenience, we will refer to the father's car as the defendant's car.

The record discloses that the plaintiff and her daughter were, at the time of the accident which occurred at about 11 p. m., April 1, 1946, employed at a factory. They checked out from work at 10:30 p. m. Before starting for home the daughter examined the taillights on the plaintiff's car. Apparently it was the custom of the plaintiff and her daughter to examine the taillights before leaving their place of work. The night was clear, stars were out, plaintiff's car was clean, and the streets were dry. The plaintiff was driving, and her daughter was seated in the front seat to the plaintiff's right. When the plaintiff angled off Harrison Street to proceed south on the highway, her speed was 20 miles an hour. Midway between her home and Harrison Street she met a car proceeding north in the outer lane of the northbound highway. She dimmed her lights in meeting this car, and then put them on bright again. She was driving in the lane designated as No. 1, which is the outside lane closest to the west curb. After meeting the car, she requested her daughter to look back and see if any cars were coming. The daughter turned completely around, looked, and reported no cars were coming. The plaintiff also looked in the rear-vision mirror and saw no cars coming. She then drove her car into the second lane, about 100 feet distant from her driveway, slowing her car down due to the sharp turn into the driveway. After driving approximately 100 feet in the inner lane, which is designated as lane No. 2, the plaintiff started to angle her automobile to the left, or east, toward the driveway, at a speed of five to ten miles an hour. She observed no cars on the highway, either moving or parked, and had looked into the rear-vision mirror before she started to angle across the center of the highway. She heard a screeching of brakes and saw a flash of light, and her car was hit immediately. She was then approximately 30

feet north of the driveway. She heard no horn. Her left window was down. She made no signal to turn to the left, nor a signal that she was going to slow down. When the impact occurred, plaintiff's car made a complete turn and came to rest with the front end five feet south of the driveway, facing north. The left rear fender of the plaintiff's car was bent in; the spare tire, which is attached to the back part of the car, was jammed into the body; the gas tank had sprung a leak; the fenders and tires were damaged, the impact being on the left rear fender; and the left taillight was smashed. The bumper on the front of the defendant's car was jammed into the motor, both headlights were hanging, the radiator and grille were pushed back, and the fenders damaged.

The defendant's version of the accident is, in substance, as follows: As he was proceeding south on the Fort Crook highway straddling the center line between the two southbound lanes, all of a sudden he saw what proved to be the plaintiff's car straddling what has been designated as lane No. 2, making a turn. It looked to him like the plaintiff's car was stopped, and he started to apply his brakes and turn to the left. Then it seemed to him as if the plaintiff's car started to move again. He then applied the brakes hard and started to slide. His automobile struck the plaintiff's automobile on the left back part thereof. The accident occurred at a point about where the center line separates the northbound and southbound lanes. He saw no taillights or anything on the back part of the plaintiff's car, and the first thing he noticed was the reflection of her headlights on the highway. No signal was given by the plaintiff for a left turn. The defendant had dimmed the lights on the car he was driving when he met a car near Harrison Street, and had not put them back up; they were on for city driving. He testified that the plaintiff's car was muddy. The mud had dried, making the back of the car look light brown. He testified to slight damage to the plaintiff's car, that the left taillight was smashed in a little, the

right one being in perfect condition, but not burning. Two or three minutes after the accident the plaintiff turned her car a little to the left, straightened it up, and drove it right straight into the driveway. The car the defendant was driving came to rest a little north of the driveway. There were tire marks which started in the inner lane going south, or what has been designated as the No. 2 lane, and continued in the inner lane going north, 40 to 50 feet in length. The lights on the defendant's car shone 40 to 50 feet in front of his car, and he was 50 to 60 feet north of the plaintiff's car when he first saw it. His headlights did not shine on it. He further testified that he could stop his car in from about 40 to 50 feet at 35 miles an hour; that the glass and taillights on the plaintiff's car were muddy; that the plaintiff told him that she was in the wrong and did not see them; and her daughter told him she had seen the defendant's lights.

The testimony of the passengers in the car driven by the defendant substantially corroborated the defendant's testimony.

There is the evidence of a patrolman who arrived at the scene of the accident about 11:55 p. m., that the night was clear and there was no dampness on the streets, they were dry. He observed skid marks 69 feet in length which started a few feet west of the center line of the highway and thence across the center line into the northbound lane on the east side of the highway, in a southeasterly direction in close proximity to the plaintiff's driveway. The headlights and grille on the front of the defendant's car were pretty well demolished. The left rear corner of the plaintiff's car was damaged. The left taillight was damaged, and the lights were off on the plaintiff's car. The plaintiff turned the lights on, and the right taillight was out. The officer tapped it and it came on.

The plaintiff's husband arrived at the scene of the accident about 12:30 a. m. He testified to the damage to the plaintiff's car substantially as heretofore set out. The

taillights were not burning. He testified that the wire was crushed when the left rear fender was smashed tight against the metal, and no electricity could get into the taillights; that when he lifted the left rear fender it released the metal and that is when the right taillight came on.

The evidence is in controversy as to whether or not this witness' testimony is correct in that the wire could be crushed so tight against the metal, as described by him, to such an extent that it would eliminate electricity going into the taillights.

The daughter testified that the taillights on the plaintiff's car were burning. She observed them before she got in the car when they left the factory. She looked back through the back window and could see the cafe sign, but observed nothing in the way of cars approaching. The plaintiff pulled into the inside lane after this daughter had looked to the rear, about half a block from the driveway. The car had slightly angled at the time of the impact, from lane No. 2 across the center line of the highway. She observed the car lights just before the impact, heard the screeching of the brakes, and then the impact.

The general rule in this jurisdiction when a motion for directed verdict is made, follows: " 'A motion for a directed verdict must for the purpose of decision thereon be treated as an admission of the truth of all material and relevant evidence submitted on behalf of the party against whom the motion is directed. Such party is entitled to have every controverted fact resolved in his favor, and to have the benefit of every inference that can reasonably be deduced from the evidence.' " Gutoski v. Herman, 147 Neb. 1001, 25 N. W. 2d 902.

Having in mind the foregoing rule and the application of the same to the evidence in the instant case, we conclude that the evidence of the respective parties is in controversy in several respects.

The evidence is in controversy as to whether or not

the defendant was keeping a proper lookout for automobiles which were ahead of him on the highway; whether or not he had his automobile under control at the time the accident occurred; whether or not the lights on his car were on; and the rate of speed that he might have been traveling at the time of the accident as shown by the physical facts such as the skid marks on the pavement; the damage to the front of the defendant's car immediately after the impact; the damage to plaintiff's car; the debris and position thereof; and the position of the cars after the impact.

In addition, the plaintiff contends that the general rule is controlling as announced in Roth .v. Blomquist, 117 Neb. 444, 220 N. W. 572, 58 A. L. R. 1473: "As a general rule it is negligence as a matter of law for a motorist to drive an automobile so fast on a highway at night that he cannot stop in time to avoid a collision with an object within the area lighted by his lamps."

The evidence discloses that the highway at the point of impact was not lighted, and the defendant's evidence is to the effect that the taillights on plaintiff's car were not burning; that the back part of her car was of a light brown color due to mud having dried on it; that the taillights and headlights on her car were covered with dried mud; that the lights on his car, by which he could see an object 50 to 60 feet in front of him when set for city driving, did not reflect or shine upon the plaintiff's car; and that he saw first the reflection of her lights when the plaintiff was attempting to negotiate the turn into her driveway.

We are not in accord with the plaintiff's contention as to the applicability of the rule as announced in Roth v. Blomquist, *supra,* to the facts in the instant case. As this court said in Buresh v. George, *ante* p. 340, 31 N. W. 2d 106, in discussing the rule as set forth in Roth v. Blomquist, *supra,* which recognizes exceptions to the rule: "However, on unlighted streets and highways, * * * we have made exceptions to this general rule when

the nature of the object or its condition, such as color, dirt, et cetera, in relation to the highway or road, affected its immediate visibility * * *. In such cases we have held that the issue of the driver's negligence, if any, and the degree thereof is for the jury." Citing cases.

The general rule as set forth in Roth v. Blomquist, *supra*, has no application in those cases where reasonable minds may differ on the question of whether or not the operator of an automobile exercised the care, caution, and prudence required of him under the circumstances of the particular situation. See Miers v. McMaken, 147 Neb. 133, 22 N. W. 2d 422.

The defendants contend that the plaintiff violated the following statutory provisions, and by doing so was guilty of negligence more than slight, while the defendants' negligence was less than gross, citing section 39-7,115, R. S. 1943, which provides: "(a) No person shall turn a vehicle from the direct course upon a highway unless such movement can be made with reasonable safety, and then only * * * after giving an appropriate signal in the manner hereinafter provided in the event any other vehicle may be affected by such movement. (b) A signal of intention to turn right or left shall be given continuously during not less than the last fifty feet traveled by the vehicle before turning."

The defendant also cites section 39-7,117, R. S. 1943, which provides: "All signals required by sections 39-7,111 and 39-7,115 to be given by hand and arm shall be given from the left side of the vehicle in the following manner and such signal indicated as follows: (1) Left turn, arm and hand extended horizontally; * * * (3) stop or decreased speed, hand and arm extended downward."

Admittedly, the plaintiff violated the statute by failing to signal for a left turn into her driveway. However, "A violation of statutes regulating the use and operation of motor vehicles upon the highways is not negligence per se, but evidence of negligence which may be taken into consideration with all the other facts and circumstances

in determining whether or not negligence is established thereby." Landrum v. Roddy, 143 Neb. 934, 12 N. W. 2d 82; Gleason v. Baack, 137 Neb. 272, 289 N. W. 349.

The degree of negligence, if any, of plaintiff's failure to give a signal in accordance with the foregoing statutes of her intention to turn into her driveway and the effect the failure to do so would have upon the operation of defendant's car, are questions for the jury. Also, the other charges of negligence against the plaintiff, as set forth in defendant's answer and counterclaim, are questions for the jury.

"Where different minds may reasonably draw different conclusions from the same facts as to whether or not they establish negligence or contributory negligence, those issues must be submitted to the jury." Buresh v. George, *supra*. See, also, Gutoski v. Herman, *supra*.

Upon a consideration of all the facts as disclosed by the record and under the authorities heretofore set out, this case presents a factual situation upon which reasonable minds might draw different conclusions, and therefore presents a jury question as to the plaintiff's negligence and the defendant's negligence under the comparative negligence statute. The defendant's motion for directed verdict should have been overruled.

For the reason given in this opinion, the judgment of the district court is reversed and the case remanded for further proceedings.

REVERSED AND REMANDED.