ROBERT B. PLUMB, APPELLEE, v. SUMNER W. BURNHAM ET AL., APPELLANTS.

36 N. W. 2d 612

Filed April 7, 1949. No. 32508.

130

*A. J. Luebs,* for appellants.

*Kirkpatrick & Dougherty,* for appellee.

Heard before SIMMONS, C. J., CARTER, MESSMORE, YEAGER, CHAPPELL, WENKE, and BOSLAUGH, JJ.

CHAPPELL, J.

Plaintiff brought this action to recover for personal

injuries and property damage resulting from an accident wherein plaintiff's car, traveling east, collided with the rear of a one-and-one-half-ton Studebaker truck, owned by defendant Sumner W. Burnham, but driven and allegedly parked unlawfully upon the highway east of York by his employee, defendant John Worman. The issues of defendants' negligence and plaintiff's contributory negligence, respectively alleged to have proximately caused the accident, together with the amount of plaintiff's alleged damages, were tried and submitted to a jury, whereat plaintiff recovered a verdict for $4,502.33.

Judgment was entered thereon, and defendants' motion for judgment notwithstanding the verdict, or, in the alternative, for a new trial, was overruled. Defendants appealed, assigning as error substantially that: (1) The trial court erred in overruling defendants' motion for directed verdict made at the conclusion of plaintiff's evidence and at the conclusion of all the evidence, and erred in overruling defendants' motion for judgment notwithstanding the verdict respectively made upon the ground that plaintiff had failed to prove any negligence by defendant driver proximately causing the accident, and because plaintiff's own negligence was more than slight as a matter of law; (2) erred in giving instructions Nos. 2, 4, 9, 10, 11, and 12; and (3) the verdict was excessive. We conclude that the assignments should not be sustained.

In connection with the first assignment, the applicable rule is that: "A motion for a directed verdict must for the purpose of decision thereon be treated as an admission of the truth of all material and relevant evidence submitted on behalf of the party against whom the motion is directed. Such party is entitled to have every controverted fact resolved in his favor, and to have the benefit of every inference that can reasonably be deduced from the evidence." Dickman v. Hackney, 149 Neb. 367, 31 N. W. 2d 232; Kipf v. Bitner, 150 Neb. 155, 33 N. W. 2d 518. By analogy, the same rule applies to a motion for

judgment notwithstanding the verdict. Remmenga v. Selk, 150 Neb. 401, 34 N. W. 2d 757.

It is also the rule that: "If contributory negligence is relied upon by defendant as an affirmative defense, the burden is upon him to prove it by a preponderance of the evidence pertinent to that issue contained in the whole record, except in so far as the same may appear in the evidence adduced for the plaintiff." Roberts v. Carlson, 142 Neb. 851, 8 N. W. 2d 175.

In the light thereof, we have examined the record. By virtue of the answer, it was admitted that defendant, Sumner W. Burnham, hereinafter called defendant, was on December 10, 1946, the date of the accident, the owner of the truck, and that defendant John Worman, hereinafter called defendant driver, was operating the same as an employee of defendant within the scope and course of his employment, hauling a load of shelled corn in an easterly direction over concrete U. S. Highway No. 34, state highway No. 2, east of York, where plaintiff's car collided with it sometime after defendant driver had stopped the truck partly on the paved portion of the highway. It was stipulated that the time of sunset on December 10, 1946, was 5:03 p. m.

There was competent evidence adduced in plaintiff's behalf from which a jury could reasonably have concluded as follows: Plaintiff, an independent automobile accessory salesman, was driving his Chevrolet car "in A Number 1 shape all over" from the west on the right side of the highway at about 40 miles an hour. The traffic was heavy. It was dark, and plaintiff's lights were on. The collision occurred at about 5:50 p. m., as plaintiff approached a point on the concrete paved highway about two and three-quarter miles east of York. Just before the accident, a car with its lights on, came from the east. As it approached plaintiff, the driver thereof dimmed his lights, then plaintiff dimmed his lights. At that instant, and at a time when the other car was so close that plaintiff could not turn out, the gray rear end of defend-

ant's truck loomed up in front of plaintiff, where defendant driver, out of gas, had parked and left it, without lights on the truck or the display of any flares, fuses, flags, or other warning, directly on the right side of the 20-foot concrete pavement, which had a traversable 8-foot shoulder to the south thereof. The defendant driver admitted to the sheriff after the accident that he had run out of gas and parked partly on the pavement, without having any flares or flags to put out. The evidence discloses, without dispute, that he had pleaded guilty in the county court when charged with failure to put out flags.

Plaintiff, upon seeing the truck, swung hard to the left, applied his brakes, and slowed down three or four miles an hour, but the right front side of his car collided with the left rear of defendant's truck. Plaintiff's car was badly damaged, from the right front back and across the radiator, right fender, cowl, and door. Plaintiff received serious and permanent personal injuries, requiring hospitalization, surgery, medical care, and causing pain and suffering which still continued, although abated at the time of the trial. Also, as a result thereof, plaintiff suffered a complete loss of time from his employment for four months, and partial loss thereof for two months thereafter.

After the accident, plaintiff's car was on the pavement facing east, with the left wheels north over the black center line, while the truck was in the ditch south of the pavement, facing southeast, approximately 30 feet from plaintiff's car. There was broken glass on the south lane of the pavement, and some of the shelled corn had spilled from the truck, about half on the south side of the pavement and half on the shoulder.

Evidence adduced in defendant's behalf controverted the exact time of the accident, whether or not there were lights burning on the truck, and the then general extent of visibility. Defendant driver had been operating trucks for some 26 to 28 years, and was thoroughly familiar with the highway and traffic thereon. He thought the engine

on his truck was going to stop several lengths of the truck before it did, and just west of the point of the accident the engine killed abruptly, whereupon the truck went about 30 feet, when the driver cut slightly to the south, but the shoulder was soft, and when the two front wheels were off the pavement and the right rear was off about a foot, the truck stopped and he was unable by its own power to move it further.

It was then 4:40 p. m., and for the first time the driver looked for flags and flares, but found that he had none. He testified that he had driven the truck between the elevator and the place where he was shelling corn, seven miles north of U. S. Highway No. 34, state highway No. 2, and one mile east of U. S. Highway No. 81, several trips during the day. He did not fill the truck with gas when he took it in the morning because someone else filled it the night before. He put no gas in the truck during the day. He said he looked at the gauge before he left the place where they were shelling corn, because he had a couple more trips to drive, and the gas gauge then showed half full. It had theretofore been accurate, and he depended upon it without looking in the tank. However, when the truck stopped on the highway, the gas gauge showed empty, and the tank was empty. There was no evidence of gas leakage or other withdrawal, although a seam in the tank was found to be cracked after the accident.

He testified that the rear of the truck was red in color, with a clean white endgate, and that after the truck stopped, he turned on the lights. At about 4:50 p. m. he left and caught a ride in another truck back to York. He did not ask the driver thereof to push his truck off the highway, and on the way passed several nearby filling stations where he could have obtained gas, and several places where he could have telephoned for help. At the employer's regular station in York he obtained gas, and, in a pick-up, started back to the point where he had left his truck. He said that he had been gone about three-

quarters of an hour. He testified that at a point about 1,000 feet from the truck, without the aid of lights, he observed his truck roll off the highway into the ditch. Upon arrival, he found the plaintiff injured, pinned in his car. They removed him therefrom to a car driven by a lady who was already upon the scene. She took plaintiff to the hospital. Defendant driver said that plaintiff's car was then facing east, south of the center line, and that his truck, with its lights still burning, except the left boundary light, was headed south, southeast of the car, clear to the fence line. Gas was later put in the truck and it was driven out of the ditch, over the shoulder, and back on the pavement.

In the foregoing situation, in order to determine whether or not plaintiff was guilty of negligence as a matter of law, we must apply well-established legal principles. In Floyd v. Edwards, 150 Neb. 41, 33 N. W. 2d 555, it was held: "As a general rule, it is negligence, as a matter of law, for a motorist to drive an automobile so fast on a highway at night that he cannot stop in time to avoid collision with an object within the area lighted by his lamps, but there are well-established exceptions thereto, dependent upon the nature or condition of the object in relation to conditions on or adjacent to the highway adversely affecting immediate visibility of the object."

The exceptions aforesaid and their application as well were discussed at length in Buresh v. George, 149 Neb. 340, 31 N. W. 2d 106, Pierson v. Jensen, 150 Neb. 86, 33 N. W. 2d 462, and Miers v. McMaken, 147 Neb. 133, 22 N. W. 2d 422. We will not repeat them here. It is sufficient to say that the case at bar comes squarely within such exceptions to the general rule, which "has no application in those cases where reasonable minds may differ on the question of whether or not the operator of an automobile exercised the care, caution, and prudence required of him under the circumstances of the particular situation" in which cases

"the issue of negligence on the part of the operator is one of fact to be determined by a jury." Miers v. Mc-Maken, *supra.* We conclude, therefore, that plaintiff was not guilty of contributory negligence more than slight, as a matter of law.

We turn then to the question of whether or not plaintiff adduced any competent evidence that defendants were negligent. As heretofore observed, there was competent evidence in the record from which the jury could reasonably have found that defendants violated sections 39-757, 39-778, and 39-7,118, R. S. 1943. Admittedly, they violated section 39-7,119, R. S. 1943.

In that connection, the two last-cited sections required defendant's truck to display flags between one-half hour before sunrise and one-half hour after sunset, and flares from one-half hour after sunset until one-half hour before sunrise, in the manner required therein, whether the truck was parked on the highway voluntarily or was involuntarily stopped thereon temporarily.

Of course, the violation of statutes regulating the use and operation of motor vehicles upon the highway is not negligence per se, but evidence of negligence which may be taken into consideration with all the other facts and circumstances in determining whether or not negligence is established thereby, and where the evidence is such, as in the case at bar, that reasonable minds may draw different conclusions therefrom, the questions of negligence and contributory negligence are for the jury. Gleason v. Baack, 137 Neb. 272, 289 N. W. 349; Anderson v. Robbins Incubator Co., 143 Neb. 40, 8 N. W. 2d 446; Pierson v. Jensen, *supra.* We conclude, therefore, that the first assignment of error has no merit.

Instruction No. 2 submitted the respective claims of the parties, and thus presented to the jury the issues made by the pleadings, which were supported by the evidence heretofore set forth. Instruction No. 9 correctly recited the respective statutes applicable to the parties, under the evidence. Defendants argued that

instructions Nos. 2 and 9 were prejudicially erroneous primarily upon the theory that there was no competent evidence that the accident occurred between one-half hour after sunset and one-half hour before sunrise. Therefore, that issue was erroneously submitted in instruction No. 2, and the statutes recited in instruction No. 9 had no application. We conclude otherwise, and in that regard find that instructions Nos. 2 and 9 were not prejudicially erroneous.

Instruction No. 3, it is conceded, clearly set forth the material allegations of plaintiff's petition, all of which, as stated in instruction No. 5, plaintiff had the burden of proving by a preponderance of the evidence, before he could recover. Among such material allegations was the plea that defendants were negligent in some manner as alleged, and that such negligence was the proximate cause of injuries and damages to plaintiff. Instruction No. 4 simply set forth clearly the issues of fact ultimately to be determined by the jury. Instruction No. 4 could not be subject to the criticism that the court therein assumed that defendants were negligent. As a matter of fact, the issues were thus presented in a clear, logical, and concise manner.

Instruction No. 10 instructed the jury that the driver of an automobile upon the public highways "is required to have his automobile under such reasonable control as will at all times enable him to avoid collision with other vehicles being *lawfully* operated on the highway," but that "the law does not require such driver to antici- pate negligence or violation of traffic regulations by another, in the absence of notice, warning or knowledge of such condition." (Italics ours) Defendant claimed that the court erred in using the word "lawfully," which implied that plaintiff could not be guilty of contributory negligence or negligence more than slight as a matter of law if the other vehicle was unlawfully or negligently operated. In Spomer v. Allied Electric & Fixture Co., 120 Neb. 399, 232 N. W. 767, it was held: " 'A driver of

an automobile should have his car under such reasonable control as will enable him to avoid collision with other vehicles, assuming that the drivers thereof will exercise due care.' " In other words, a user of the highways may assume, unless and until he has warning, notice, or knowledge to the contrary, that other users of the highways will use them in a lawful manner, and, until he has such warning, notice, or knowledge, he is entitled to govern his actions in accord with such assumption. See,. also, 5 Am. Jur., Automobiles, § 169, p. 600, and Sidle v. Baker, 52 Ohio App. 89, 3 N. E. 2d 537. The instruction was not prejudicially erroneous.

Instruction No. 11 told the jury that generally a motorist was negligent as a matter of law if he operated a motor vehicle in the nighttime on a public highway at such a rate of speed that he could not stop and avoid an obstruction within the range of his lights. Therein, the jury was also told that if they found from the evidence that plaintiff violated that rule, "taking into consideration the color of the truck, of the pavement and all of the surrounding circumstances, then as a matter of law the plaintiff was negligent and cannot recover." Defendant contended that instruction No. 11 was erroneous because it used the language last above quoted, and that instruction No. 2 was erroneous because it used comparable language when there was no evidence of the color of the pavement. In that regard, the undisputed evidence shows that the pavement was concrete. It is common knowledge in this jurisdiction that concrete pavement is. light to dark gray in color, and in the absence of evidence to the contrary, it was not erroneous for the court to take judicial notice thereof. 31 C. J. S., Evidence, § 94, p. 690. We conclude that defendant's contentions in that regard were without merit.

We turn then to instruction No. 12. In that connection, instruction No. 2, which submitted the respective allegations of negligence proximately causing the accident as pleaded by the parties, set forth in part that defendants.

negligently failed to have a sufficient supply of gasoline and "permitted the said truck to continue its course until the supply of gasoline was completely exhausted" and "that after said truck was so parked the said defendants neglected to remove the same from said highway or to summon help to remove said truck, knowing that said highway was a main, traveled cross-country highway." Instruction No. 12, about which defendants complained, related to those allegations.

Turning to the evidence, it will be observed that defendants' truck was not mechanically disabled. Admittedly, all that it needed to remove it from the highway was gas power, the obtaining of which was not beyond but within the driver's immediate control. Admittedly, the truck was first stalled and parked as it was on the highway in the daytime, solely for lack of gas. Thereafter, defendant driver not only admittedly failed to have or display flags or flares, but also there was evidence that he did not temporarily leave the truck unguarded in that position, to immediately obtain gas and replenish the supply at a convenient place and thereby or otherwise attempt to remove it from the highway within a reasonable time. Rather, he admittedly did not request the driver of a truck who came upon the scene in a few moments to push it off the highway or notify others of his need for gas, but defendant driver got in that truck, passed several gas stations on the "Y" north of York, passed several opportunities near at hand to phone for aid, and went clear on into York, to return therefrom with gas three-quarters of an hour later. In the meantime it grew darker, and the truck so parked became more hazardous for vehicles traveling upon the highway, and thus the accident occurred.

In that situation, instruction No. 12 recited substantially the first paragraph appearing in 2 Blashfield, Cyclopedia of Automobile Law and Practice, § 824, p. 3, to wit: "Generally speaking, it is the duty of an automobile driver on the public highway to see that his car

is maintained in such condition as to fuel supply that it may not become a menace to, or obstruction of, other traffic by stopping on the road, and failure to exercise a reasonable degree of care to keep it in proper condition in this respect, resulting in his stalling for want of a sufficient supply of gasoline or other motor fuel, is negligence."

The text then went on to state, in a second paragraph: "But, if a motorist has done all that can be reasonably expected of a person of ordinary prudence to put his vehicle in proper condition, and an unforeseen failure of his gasoline supply occurs, it does not necessarily follow that he must be deemed negligent as a matter of law."

Huddy, Cyclopedia of Automobile Law (9th ed.), vol. 3-4, § 79, p. 133, states the foregoing rule in substantially the same language. See, also, 5 Am. Jur., Automobiles, § 333, p. 681; Keller v. Breneman, 153 Wash. 208, 279 P. 588, 67 A. L. R. 92, distinguished in Chapin v. Stickel, 173 Wash. 174, 22 P. 2d 290; Rath v. Bankston, 101 Cal. App. 274, 281 P. 1081; Casey v. Gritsch, 1 Cal. App. 2d 206, 36 P. 2d 696.

Defendants did not object to the issue as pleaded and submitted in instruction No. 2, but simply contended with regard to instruction No. 12, that the trial court erred in failing to give only the second paragraph of the Blashfield rule, or erred in failing to tell the jury in any event that a violation of the duty stated in paragraph No. 1 would not be negligence but only evidence of negligence.

As a matter of course, the mere stalling of a motor vehicle temporarily upon the highway caused by an exhaustion of the gas supply, would not ipso facto constitute negligence as a matter of law. Chapin v. Stickel, *supra.* On the other hand, however, a finding by the jury of failure to use ordinary care to replenish the vehicle with gas thereafter, and thereby remove the stalled vehicle from the highway within a reasonable time when it was possible to do so, would be negligence.

The question of proximate cause with relation thereto was not discussed by defendants, but instructions Nos. 2, 3, 4, 5, 7, and 15 made it crystal clear that before plaintiff could recover, he had the burden of proving by a preponderance of the evidence that defendants were negligent in some manner alleged, and that such negligence was·the proximate cause of the accident.

It may be conceded that the instruction of itself was not sufficiently explicit, but defendants made no request for any instruction upon the issue. In that connection, the rule is that: "'A party desiring a more explicit instruction than that given should offer such an instruction.'" Hannah v. American Live Stock Ins. Co., 111 Neb. 660, 197 N. W. 404. As held in Christensen v. Tate, 87 Neb. 848, 128 N. W. 622: "Instructions must be considered and construed together. If they are not sufficiently specific in some respects, it is the duty of counsel to offer requests for instructions that will supply the omission. And, unless this is done, the judgment will not ordinarily be reversed for such defects." Likewise, in Edwards & Bradford Lumber Co. v. Lamb, 95 Neb. 263, 145 N. W. 703, this court held: "Where an instruction is given to a jury, which it is claimed did not fully state the rule of law upon the subject involved therein, but did not misstate any rule to be applied, the attention of the court should be called to the omission, as claimed, by an instruction containing the alleged omission. If not, there can be no ground for reversal therefor."

We conclude that instruction No. 12, when considered and construed in connection with the evidence aforesaid and all the other instructions, more particularly Nos. 2, 3, 4, 5, 7, 15, and 9, paragraph 2 of which recited the exception or exculpatory provision of section 39-757, R. S. 1943, the equivalent of the second paragraph of the Blashfield rule, could not have affected the substantial rights of defendants, and would, in the light of section 25-853, R. S. 1943, not be prejudicially erroneous.

Defendants argued in the brief that the trial court erred

in refusing to receive in evidence two certain described exhibits. However, the alleged errors in that regard were not assigned as such. By Rules of the Supreme Court, 8 a 2 (4): "* * * consideration of the cause will be limited to errors assigned and discussed. However, the court may, at its option, notice a plain error not assigned." We have examined the record and conclude that the alleged errors argued by defendants were not plain errors not assigned, and we will not give them further consideration.

Finally, we have examined the record in connection with defendants' contentions that the verdict was excessive. It is generally the rule that: "A verdict may be set aside as excessive by the trial court or on appeal only when it is so clearly exorbitant as to indicate that it was the result of passion, prejudice, mistake, or some means not apparent in the record, or it is clear that the jury disregarded the evidence or rules of law." Horky v. Schroll, 148 Neb. 96, 26 N. W. 2d 396. In the light thereof, we conclude that the assignment has no merit.

We find no prejudicial error in the record, and since the verdict was amply supported by competent evidence, the judgment of the trial court should be and hereby is affirmed.

AFFIRMED.