TOM G. DORN, APPELLEE, v. WILLIAM STURGES, APPELLANT.

59 N. W. 2d 751

Filed July 24, 1953. No. 33351.

*Gross, Welch, Vinardi & Kauffman* and *Gray & Brumbaugh,* for appellant.

*Hubka & Hubka* and *Fraser, Connolly, Crofoot & Wenstrand,* for appellee.

Heard before SIMMONS, C. J., CARTER, MESSMORE, YEAGER, CHAPPELL, and BOSLAUGH, JJ.

MESSMORE, J.

This is an action at law brought in the district court for Douglas County by Tom G. Dorn against William Sturges to recover damages to the plaintiff's 1941 Ford V-8 2-ton truck, hereinafter referred to as the truck, driven by his son Arthur Dorn, as the result of a collision between plaintiff's truck and the defendant's 1947 Plymouth coach driven by the defendant. The accident occurred at Sixtieth and L Streets in Omaha. Nebraska.

The case was tried to a jury resulting in a verdict in favor of the plaintiff and against the defendant in the amount of $1,045, and a dismissal of the defendant's cross-petition. The defendant filed a motion for new trial which was overruled. From the order overruling the motion for new trial, the defendant perfected appeal to this court. For convenience we will refer to the parties as they are designated in the district court.

Insofar as necessary to a determination of this appeal, we set forth the substance of the pleadings.

Plaintiff's petition charged the defendant with negligence in the following respects: That defendant failed to keep his car under proper control, and he failed to keep a proper lookout for other automobiles at the same time and place; that he failed to stop his car at the stop sign located north of the intersection of Sixtieth and L Streets, or at any time prior to entering the intersection; that the defendant failed to stop his car for sufficient length of time before entering the intersec-

tion to ascertain if the intersection was clear of approaching vehicles constituting a menace; that the defendant failed to concede the right-of-way to the truck; that the defendant failed to give warning of his intention to turn to the east when entering the intersection; that the defendant cut inside the center point of the intersection toward the east, and in turning into the intersection failed to make a square turn as provided by law; and that the defendant failed to stop or divert the course of his automobile and thereby avoid a collision upon discovering the truck.

In addition thereto, the plaintiff alleged that the truck, as heretofore described, was demolished to the extent that it could not be repaired and placed in as good condition as it was prior to the accident; that the reasonable market value of the truck immediately before the accident was $1,400; that the reasonable market value of the same after the accident was $425; that the plaintiff's truck was damaged in the amount of $975; that after the accident the truck had to be immediately removed from the highway at a cost to the plaintiff of $5, and thereafter towed to Beatrice, Nebraska, at an expense of $65; and that these amounts were fair and reasonable and constituted a part of plaintiff's damages.

There was an item in the amount of $100 for the loss of the use of the truck as a result of the collision at $10 a day for 10 days which the trial court did not submit to the jury.

The plaintiff prayed for damages in the amount of $1,145, interest and costs, which was restricted to $1,045, interest and costs.

The defendant's answer denied generally the allegations of the plaintiff's petition not admitted; specifically denied the necessity of towing the truck, or that the amount charged therefor was reasonable; and admitted the ownership of the truck in the plaintiff and the operation thereof by his son at the time of the accident.

The defendant, by cross-petition, alleged injury and

disability to himself and damage to his automobile resulting from the negligence of the plaintiff and the plaintiff's son in the following respects: Failure of the plaintiff's son to observe south-bound traffic on Sixtieth Street; failure to surrender right-of-way to the defendant; excessive speed under the conditions prevailing; that the plaintiff's son made an abrupt turn of the truck to the left and into defendant's car instead of proceeding straight ahead or to the right to avoid the collision; and failure of the plaintiff's son to sound his horn or give other warning or to apply his brakes. The cross-petition alleged damages in the amount of $4,647.95. There was no proof offered as to $450 salary alleged as damages by the defendant. The employer continued to pay defendant during his absence from work.

The intersection of the streets and location of the scene of the accident may be described as follows: Sixtieth Street runs in a north-south direction, L Street runs in an east-west direction, and both are paved with concrete. L Street is a 4-lane highway with the paving 42 feet wide as it approaches the intersection of Sixtieth and L Streets from the east. West of the intersection L Street is a 2-lane highway with the paving 20 feet wide. The paving on Sixtieth Street is 18 feet wide, and it is a 2-lane street. On the northwest corner of the intersection is the Tex Filling Station. There is a stop sign on the west side of Sixtieth Street to the north of L Street, located in a concrete well the center of which is 44 feet north of the edge of the paving of L Street west of the intersection. This stop sign is for traffic going south on Sixtieth Street. There is another stop sign, which is a straight sign, 58.8 feet south of the south edge of L Street east of Sixtieth Street, that is for north-bound traffic on Sixtieth Street. The percentage of grade east on L Street is 6.6 percent, and on the west 5.6 percent, 5.2 percent, and 4.76 percent. The grade east of the intersection continues up the hill and is practically a straight grade for at least 1,000

feet. It is 1,000 or 1,200 feet to the summit of the hill. The distance from the southeast corner of the filling station to the north edge of L Street is 31 feet. The distance from the west edge of Sixtieth Street to the same corner of the filling station is 32 feet. Sixtieth Street and L Street are not in the city limits. Where Sixtieth Street enters the intersection, the pavement curves to the east and west on L Street, and it is 61 feet from the north line of L Street west to where the pavement starts to curve.

The plaintiff's son testified that at the time of trial he was 19 years of age; that he resided with his parents on a farm 2 miles north of Filley and 15 miles east of Beatrice; that stock is raised on this farm; that he began driving a truck with an assistant when he was 16 years of age, and subsequently by himself in making trips to Omaha; that such trips were made on numerous occasions to deliver stock; and that the truck involved in the accident carried stock which he was to deliver at the stock yards in Omaha on the day in question. He left the farm home between 12 midnight and 1 a. m. The stock was unloaded and he rested, then proceeded back toward home which is a distance of 92 miles from the stockyards. He further testified that he was driving the truck west on L Street in the farthest lane to the north until he came to a point where the lines converge into the 2-lane highway on L Street. He was driving in low range, the truck having eight gears, at a speed not to exceed 30 or 35 miles an hour as he proceeded down the hill. The morning was clear, the sun had just begun to rise. It was daylight, and the pavement was clear with no snow or ice. He was familiar with the intersection and knew where the stop sign was located on Sixtieth Street. As he came down the hill he could see the defendant's car approaching approximately 10 or 15 feet north of the stop sign. At that time his truck was 175 feet east of the intersection. He watched the defendant's car, and knew that the defendant would

encounter the stop sign before he entered the intersection into L Street. The defendant did not stop at this stop sign. When he first saw the defendant's car it was going approximately 25 to 30 miles an hour. Defendant was then 10 or 15 feet north of the stop sign. He slowed up a little as he approached the stop sign. This witness placed his foot on the brake. At that time the defendant was coming into the first lane past the stop sign, and the witness observed he was not going to stop. The truck was then 75 feet east of the intersection. The truck was equipped with hydraulic brakes which were in good condition. The brakes held, and the truck slowed up and was sliding a little. The defendant kept on coming, and the witness believed he was going to stop for the second lane where the truck was traveling. The defendant made a left turn into and toward the truck, cutting the corner. There was no time to slow down to any extent before the crash, nor to sound the horn or give any warning, and there was no space to pass the defendant either to the front or rear of his car. The collision occurred about 9 feet east of the east line of the intersection in the second lane of traffic from the north, in which the truck was traveling. The left front wheel of the truck and the rear part of the defendant's left front fender made the impact. The defendant's car spun around, and that was all that this truck driver could see because steam came from his radiator and covered the windshield. The truck proceeded a few feet and stopped at the east edge of the intersection. The whole truck did not get into the intersection, just the east edge of it. That was about 8 or 9 feet west of where the crash occurred. The defendant's car rolled off toward the filling station, struck it, and rolled back toward the road. He did not see what became of the defendant. After the crash he saw the defendant lying on the pavement. The defendant's car was at the north edge of the pavement rolling toward him. Two men from the filling station came out to help, as did this

witness. The truck remained in the position in which it was stopped for about an hour after the wreck. There were some skid marks left by the truck. All six of the wheels had slid for a distance of from 7 to 9 feet, and the skid marks ended 9 or 10 feet from where the crash occurred. The witness helped the men from the filling station stop defendant's car. The truck proceeded a distance of 30 to 50 feet before the brakes actually took ahold. The damage to the truck was as follows: The radiator was pushed back; the grille and fender were knocked almost off; the motor was jarred loose; the frame was bent; the front tire, wheel, and front axle were ruined; the endgate was broken; and the left front door post of the door was bent. Subsequently the truck was removed to vacant ground near the filling station at a cost of $5, and afterwards hauled to his home near Filley by a Ford dealer of Beatrice, at a charge of $65. This witness further testified that five of the tires of the truck were subsequently sold for $40. The body was junked, and the stock rack was sold for $200. He went to the defendant's home about a month later, and the defendant told him that he did not see the truck coming.

The accident happened about 7:45 a. m., December 14, 1949.

On cross-examination an exhibit was produced consisting of a statement of a page and a half, signed by this witness, in which he stated: "I have read the preceding page and a half and it's true." There was objection to the introduction of this statement, and the questioning with reference to it was for the purpose of impeachment. The plaintiff's son insisted that he did not know the claim adjuster who took the statement. Some of the statements made therein were in accord with his testimony; others were inconsistent with it, such as the statements "As I entered 60th a car came from nowhere, at least I didn't see him until he was directly in front of me" and, "I don't know how fast he was going."

Other statements appearing in the exhibit the witness did not remember making.

The defendant's version of the accident is in substance as follows: He is a bacteriologist employed by a packing company and has been for 30 years. At the time of the accident he was going to his work, to arrive at 8 a. m. From his home he drove west to Sixtieth Street and south on Sixtieth Street to L Street, the route he ordinarily took and with which he was familiar. He was likewise familiar with the intersection and the stop sign. As he came to the stop sign at the north side of L Street, he brought his car to a stop. The rear wheels were about on a line with the stop sign. The stop sign is located so that it is necessary to proceed that far to get a clear view of L Street east and west. He could see quite a distance east and west on L Street. He looked east when he stopped, and saw the truck coming west on the north side of L Street in its proper lane, a distance of about 900 feet east of Sixtieth Street. At that time there were no other cars in sight between Sixtieth Street and the top of the hill to the east on L Street. After seeing this truck, he looked to the west on L Street. As he did so he saw two trucks proceeding east, the first of which was about 100 feet west of Sixtieth Street and the other following it 25 or 30 feet. As he proceeded into the intersection of Sixtieth and L Streets at a low speed, he observed the speed of the trucks proceeding east to ascertain whether he should pass ahead or whether he should follow them in crossing. They were coming at such a speed that he believed it would not be safe to try to proceed ahead of them. At that time his car was on the north side of L Street. He decided to give the east-bound trucks right-of-way, and they passed through the intersection before he crossed or made a turn to the left or east, in the intersection. The front wheels of his car travelled from the north edge of L Street pretty well to the center thereof. There was no warning from the west-bound truck as

it was approaching the intersection. The second time he saw the plaintiff's truck it was 25 feet in front of his car. He had not started a turn to the left. When he saw the truck he endeavored to accelerate his speed and turn to the left. He could not say what happened. He merely recalled the truck coming at him from the side. He could not give an exact idea as to how his car was facing at the time of the impact. It had been facing south and in the last split second he tried to accelerate his speed and turn left. The east-bound trucks were at such a point that he could not quite follow inside of them. They were passing at the time, as he was making the swing to the east. With reference to the center line of L Street, the right wheels of his car were south thereof. At the time of the crash he blacked out. He remembered hearing voices, and that he was lying on the pavement. The value of his automobile at the time of the accident was $1,150. He sold it for $250. He denied making a statement to the driver of the plaintiff's truck that he did not see the truck before the accident. The plaintiff's son did come to defendant's home and there was some conversation about $200. He presumed it had to do with the truck the plaintiff's son was driving.

On cross-examination this witness testified that he saw the plaintiff's truck to his left and the two trucks to his right; and that he started forward from a dead standstill and travelled a distance of 10 to 18 feet before he arrived at the north edge of L Street. He continued into L Street until he got practically to the center, and he was traveling, he believed, 10 to 15 miles an hour. He did not recall which gear he was in when he got into the intersection, but believed it to be low gear. His purpose in making the turn to the east was to avoid running into the second east-bound truck.

The operator of the filling station testified that he did not see either the truck or the defendant's car before the collision. He heard a loud crash and ran out of the

filling station. He saw the defendant's car swerve and hit a pillar on the filling station and start to coast off toward a man lying on the pavement. The car was out of gear. He reached into it and turned the key off to hold it back. It stopped some 2 feet from where the man was lying. It was moving a little southeast when he saw it. The defendant was lying just at the right edge of the north curb, a little to the southwest of the filling station, on the north edge of L Street, in other words, directly south of the southeast corner of the filling station, and about 30 feet west of the west line of Sixtieth Street, about the same distance south of the filling station, face down on the pavement with his feet over the curb. The witness obtained blankets and covered the man, called for an ambulance, and called for the Nebraska Safety Patrol. The truck was located about the middle of the 4-lane highway, straight east of Sixtieth Street, with its front wheels just about in the east lane, about the center of the street. He did not recall that any part of the truck was over the east lane of Sixtieth Street. It faced west, turned a little to the left.

One of the filling station employees testified to substantially the same facts, and that he helped get the car stopped. It was out of gear and the brakes were locked. The floor boards had been pushed over against the pedal so that it could not be pumped, and the front of the car was headed southwest. The right side door was wide open. The left side was pushed in. There was glass broken near the station. He got into the car to help stop it. As to whether the plaintiff's son helped stop it or not, this witness was unable to tell. This witness towed the truck to the outside of the filling station. It was east of Sixtieth Street on L Street, toward the center of the street facing west, maybe a little over the center.

A trooper of the Nebraska Safety Patrol testified that he arrived at the scene of the accident about 8:35 a. m.

He noticed the truck and the Plymouth coach. The truck was out on the roadway at that time a little east of the center of the intersection, and the car was at the northwest corner of the intersection off of the roadway. Both the truck and the car were on their wheels. The driver of the truck was there. There was dirt and glass shaken off of the truck and the car where they collided in the driving lane as you proceed west, east of the intersection. He did not notice any tire or skid marks on the pavement. He filed a report which he made immediately after the accident. This report was rejected when offered in evidence.

The plaintiff testified that he went to the scene of the accident the next day with his son; that he purchased the truck secondhand; and that after finishing equipping it and on the day of the accident it was worth $1,500. He further testified that it was necessary to move the truck, and he figured it cost around $65 to $70. While his testimony is confusing to some extent, the $65 or $70 expense he concluded was on a new truck deal with the Ford dealer at Beatrice. He also said that he had given the truck in its damaged condition to one of his sons.

This son testified that he received the truck from the plaintiff and he gave $225 for the tires and the truck, and traded the tires off for certain equipment so that he could rebuild another truck and use it. He testified to the damage to the truck by virtue of the accident, and that he did not use this truck, but used another truck and some of the equipment from the damaged truck. In the accident the truck was damaged to such an extent that it could not be used. He further testified that he paid for the damaged truck by working for his father as occasion required. There is some testimony that he was obligated in the amount of $425 for the purchase of the damaged truck, which he would work out on his father's farm.

A claim adjuster investigated the accident and testi-

fied that he met the plaintiff's son the day after the accident at the filling station and talked to him, and that his father and a brother were also there. The adjuster wrote down the information obtained from the plaintiff's son, handed it to him to read, he then read it, and the adjuster asked him to write at the bottom: "I have read the preceding page and a half and it's true." The adjuster saw him read the statement and sign it, and it was read to the jury at the trial.

A witness employed by H. P. Smith Motors in Omaha examined the truck at Sixtieth and L Streets, described it, and estimated that it would cost more than it was worth to repair the truck. He did not, or could not, find the estimate he had made as to the needed repairs, however it was subsequently produced by the plaintiff's son Arthur. This estimate amounted to $570.70, and the parts were itemized in the estimate.

The defendant sets forth several assignments of error which may be briefly summarized as follows: (1) The trial court erred in failing to sustain the defendant's motion for a directed verdict, or in the alternative to dismiss the plaintiff's cause, made at the close of the plaintiff's evidence and at the conclusion of all the evidence; (2) the trial court erred in admitting certain testimony into evidence over the objections of the defendant; (3) the trial court erred in submitting instruction No. 1 on its own motion; (4) the trial court erred in withdrawing from the jury the allegations of negligence pleaded in defendant's cross-petition alleging failure on the part of the plaintiff's son to sound his horn or warn the defendant of his approach; and (5) the trial court erred in not submitting to the jury the speed the plaintiff's truck was traveling before and at the time of the accident.

If a motion for a directed verdict is made at the close of the plaintiff's evidence and again at the close of all the evidence, or in the alternative to dismiss plaintiff's case, to test the sufficiency of the evidence to support

a verdict, it must be considered in the light most favorable to the successful party, that is, every controverted fact must be resolved in his favor and he should have the benefit of every inference that can reasonably be deduced therefrom. See Borcherding v. Eklund, 156 Neb. 196, 55 N. W. 2d 643.

With this rule in mind, we proceed to a determination of this appeal to ascertain whether or not sufficient evidence has been adduced by the plaintiff to warrant submission of his case to the jury.

The defendant argues that the evidence of the plaintiff's son given at the trial and the statement made by him to a claim adjuster and reduced to writing before the trial are inconsistent and contradictory, and amount to self impeachment. Defendant further argues that such evidence cannot sustain liability on the part of the defendant nor show contributory negligence on his part, and therefore the plaintiff is not entitled to recover damages. The defendant further argues that the evidence adduced on behalf of the plaintiff was insufficient to prove the proper measure of damages for the damage done to plaintiff's truck.

In this connection, we believe the duties of the driver of a motor vehicle in approaching and entering an intersection are of importance.

A driver of a motor vehicle about to enter a highway protected by stop signs must stop as directed, look in both directions, and permit all vehicles to pass which are at such a distance and traveling at such a speed that it would be imprudent to proceed into the intersection. See Simcho v. Omaha & C. B. St. Ry. Co., 150 Neb. 634, 35 N. W. 2d 501.

As stated in 5 Am. Jur., Automobiles, § 303, p. 668: "* * * it is his duty to look both to right and left; and if a vehicle is approaching on the main or arterial highway, it is his duty to wait until such vehicle has passed, unless a prudent person would have reasonable ground to believe that such other vehicle proceeding at a law-

ful speed is so far distant from the intersection that he could safely cross in advance thereof." See, also, Schrage v. Miller, 123 Neb. 266, 242 N. W. 649; Borcherding v. Eklund, *supra;* Meyer v. Hartford Bros. Gravel Co., 144 Neb. 808, 14 N. W. 2d 660.

We believe the evidence is sufficient to warrant the jury to pass upon the question of negligence of the driver of the plaintiff's truck and of the defendant.

As to the statement made by the plaintiff's son to the claim adjuster, which was not sworn to, the defendant cites and relies on cases to the effect that where a verdict is against the clear weight of the evidence so that it cannot be sustained on any principle of right or justice, it is the duty of the court to set it aside. See, Ellis v. Omaha Cold Storage Co., 122 Neb. 567, 240 N. W. 760; Clark v. Gell, 17 Neb. 284, 22 N. W. 562; Cuva v. Glens Falls Ins. Co., 136 Neb. 359, 285 N. W. 917.

The defendant also relies on the case of Gohlinghorst v. Ruess, 146 Neb. 470, 20 N. W. 2d 381, wherein the court announced the rule pertaining to a motion for directed verdict and then stated: "But when other evidence of the plaintiff demonstrates to the extent that reasonable men cannot differ thereon, that such evidence is incapable of belief, the rule does not apply and a directed verdict may properly be granted."

We are not in accord with defendant's contention as to the applicability of such cases to the instant case. The applicable rule is that extrajudicial statements of fact made by a party relating to matters material to the issues in a controversy are available to the adverse party in a trial thereof as admissions against interest or for impeachment. Such statements are, however, not conclusive but may be explained, rebutted, or contradicted, and thereafter are to be given such weight as the trier of the facts deems them entitled. See, Meyer v. Platte Valley Construction Co., 147 Neb. 860, 25 N. W. 2d 412; 31 C. J. S., Evidence, § 272, p. 1023, § 273, p. 1027, § 276, p. 1028, § 380, p. 1164. See, also, Hin-

nenkamp v. Metropolitan Life Ins. Co., 134 Neb. 846, 279 N. W. 784; Havlik v. Anderson, 130 Neb. 94, 264 N. W. 146; Miller v. Nicodemus, 58 Neb. 352, 78 N. W. 618.

In the recent case of Kipf v. Bitner, 150 Neb. 155, 33 N. W. 2d 518, a distinction between Gohlinghorst v. Ruess, *supra*, and other cases announcing the same rule, was made, which would be applicable here. We deem it unnecessary to set forth the distinction made, except to say that in such actions the plaintiffs pleaded and testified to one story in one or more actions or trials, and after obtaining a benefit therefrom, or imposing a detriment thereby, it was found that they could not substantiate their claim, in which event they materially and substantially changed their testimony or pleadings and testimony in another trial, manifestly with a fraudulent motive for the purpose of obviating objections pointed out by the court in a former trial, or to meet the exigencies of their case, and, by thus experimenting and toying with litigants in courts, they vainly sought to obtain a recovery. See, also, Angstadt v. Coleman, 156 Neb. 850, 58 N. W. 2d 507.

The weight and credibility of the testimony given by the plaintiff's son were for the triers of the facts to determine.

We have set forth the allegations in the plaintiff's petition on the measure of damages. No error is predicated on the court's instruction as it applies to this subject.

The rule is announced in Helin v. Egger, 121 Neb. 727, 238 N. W. 364: "In an action for damages to an automobile, where the automobile cannot be placed in substantially as good condition as it was before the injury, the measure of damages is the difference between its reasonable market value immediately before and immediately after the accident." This rule is followed in Lund v. Holbrook, 153 Neb. 706, 46 N. W. 2d 130.

The evidence adduced on behalf of the plaintiff was

that the truck was so damaged it could not be repaired and put in as good condition as it was before the accident, and that immediately after the accident its reasonable market value was as testified to by plaintiff's witnesses. The evidence does not show any relationship between the towing charge or the charge to remove the truck from the highway and the value of the truck after the accident, and these items should be deducted from the judgment.

With reference to the assignments of error having to do with the admissibility of evidence claimed to have been admitted and thereby prejudiced the defendant's rights, we find no prejudicial error therein affecting the substantial rights of the defendant. See § 25-853, R. R. S. 1943.

With reference to whether or not the driver of the plaintiff's truck was guilty of negligence in failing to sound his horn or warn the defendant of his presence in approaching the intersection, the following is applicable: The duty to sound a signal warning of the approach of a motor vehicle depends largely upon the circumstances of the particular case. See, Tews v. Bamrick, 148 Neb. 59, 26 N. W. 2d 499; Adams v. Welliver, 155 Neb. 331, 51 N. W. 2d 739.

We believe that under the evidence the driver of the plaintiff's truck could not be found guilty of negligence in failing to sound his horn. Failure to do so had no relation to the cause of the accident, and therefore was no part of the proximate cause thereof.

While there is some contention that the trial court erred in not instructing the jury with reference to the speed of the plaintiff's truck, there is no denial of the speed as testified to by the driver of plaintiff's truck. The defendant did not give any testimony as to the speed of the truck, either when he claims he saw it approaching 900 feet away or next when he saw it 25 feet away a split second before the crash. He was asked no questions about the speed of the plaintiff's truck, and

volunteered none. There is no merit to the above assignment of error.

The defendant contends that the trial court omitted from its instructions certain items of damages which the jury would be entitled to consider in the event the defendant should recover on his cross-petition.

The trial court's instruction No. 6 informed the jury it could consider the pain and suffering, if any, caused by the negligence of plaintiff's son, and the extent of the same, the reasonable value of medical care reasonably necessary, the reasonable value of the defendant's hospital expenses, and loss which the evidence shows with reasonable certainty defendant may have sustained. The specific items not set forth in the instruction were the cost to replace eye glasses belonging to the defendant which were destroyed by virtue of the accident, the doctor bill, and the car damage. The items of the doctor bill and the cost of the eye glasses are covered by the term "medical care." Such items as car damage are included in the word "loss."

The defendant did not object to this instruction nor submit a more detailed instruction on this subject. The following is applicable: Where an instruction is given to a jury, which it is claimed did not fully state the rule of law upon the subject involved therein, but did not misstate any rule to be applied, the attention of the court should be called to the omission, as claimed by an instruction containing the alleged omission. If not, there can be no ground for reversal therefor. See, Edwards & Bradford Lbr. Co. v. Lamb, 95 Neb. 263, 145 N. W. 703; Plumb v. Burnham, 151 Neb. 129, 36 N. W. 2d 612. See, also, Snyder v. Lincoln, 153 Neb. 611, 45 N. W. 2d 749; In re Estate of Hunter, 151 Neb. 704, 39 N. W. 2d 418; McClatchey v. Anderson, 84 Neb. 783, 122 N. W. 67.

Instructions must be considered and construed together. If they are not sufficiently specific in some respects, it is the duty of counsel to offer requests for instructions that will supply the omission. And, unless

this is done, the judgment will not ordinarily be reversed for such defects. See, Christensen v. Tate, 87 Neb. 848, 128 N. W. 622; Plumb v. Burnham, *supra*.

A party desiring a more explicit instruction than that given should offer such an instruction. See, Hannah v. American Live Stock Ins. Co., 111 Neb. 660, 197 N. W. 404; Plumb v. Burnham, *supra;* Larsen v. Savidge, 103 Neb. 79, 170 N. W. 353.

If, therefore, the plaintiff shall, within 30 days from this date, file in this court a remittitur for $70 from the judgment recovered, then said judgment shall be, and, in that event, is affirmed. If said remittitur be not so filed, then said judgment shall be reversed and the cause remanded for a new trial. See Oliverius v. Wicks, 107 Neb. 821, 187 N. W. 73. All the costs of this appeal are taxed to the defendant.

Other assignments of error are without merit and need not be discussed.

AFFIRMED ON CONDITION.

WENKE, J., participating on briefs.